Verla H. CARTER, Plaintiff
and Respondent,

v.

Gerald W. CARTER, Defendant
and Appellant.

No. 14554.

Supreme Court of Utah.

April 5, 1977.

Patrick H. Fenton, Cedar City, for defendant and appellant.

Dave McMullin, Payson, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Gerald W. Carter appeals from the refusal of the District Court to reduce his alimony payments to plaintiff Verla H. Carter from $200 per month, as provided in the divorce decree herein, to $100 per month.

The divorce was granted to plaintiff in June of 1973. She was awarded custody of the only child, with $60 per month support, and $200 per month alimony.

The position essayed by the defendant is that there has been a substantial change in circumstances: that whereas he was then in good health and earning about $21,000 per year in construction work, his health is now impaired so he has to do less strenuous work, which has reduced his earning capacity to $10,000 to $12,000 per year; and that he has increased financial obligations due to his remarriage.

■ Prefatory to addressing the principal problem, we direct attention to an attack the defendant makes upon the evidence. He argues that the trial judge improperly considered testimony given by the defendant in a prior unrelated case in which the trial judge presided. It is true that notice may be taken of the record of another case.[1] But for this to be done it should

be so offered in evidence by a party, or so stated by the trial court, so that it will be known to them what is being relied on.[2] However, this does not preclude the cross-examination of a witness on the basis of statements or representations properly imputed to him on any prior occasion, including another trial.[3]

■ In connection with defendant's testimony herein concerning his earning capacity, the trial judge himself asked the defendant if he had not testified in the other case that he was a competent cattleman. This was a legitimate question to be asked as probative on the defendant's earning capacity and thus as to his ability to pay alimony. It therefore could have been asked by counsel; and there was nothing improper in the trial court asking if he thought the pursuit of truth so required. Neither does the fact that the trial judge had this prior knowledge, ipso facto, indicate any prejudice against the defendant. The latter was fully aware that the judge had presided in the prior proceeding; and if he had thought any prejudice existed, he should have taken timely and appropriate action with respect thereto.

■ In regard to the major problem: the defendant's argument that the evidence compels a reduction in the alimony payment from $200 to $100 per month. He is mistaken in his assumption that the amount of alimony payable should be correlated in percentage to his income, to be scaled up or down as his income may vary. His earning capacity and his income are, of course, important factors to be considered. But that is only part of the total circumstances to be considered as to what is appropriate and equitable. Another major one is what are plaintiff's needs and requirements;[4] and

1. *Pierpont v. Hydro Manufacturing Co.,* 22 Ariz.App. 252, 526 P.2d 776 (1974).

2. See *State in Interest of Hales,* 538 P.2d 1034 (Utah 1975), requiring such a procedure, as stated by Justice Ellett for a unanimous court: "In any case the court should not take notice *sua sponte* of the proceedings in another case

unless the files of the other case are placed in evidence in the matter before the court."

3. 31A C.J.S. Evidence § 299.

4. *Lambert v. Lambert,* 66 Wash.2d 503, 403 P.2d 664 (1965); *Gordon v. Gordon,* 44 Wash.2d 222, 266 P.2d 786 (1954); *Hendricks v. Hendricks,* 91 Utah 553, 63 P.2d 277 (1936);

there is no showing that there has been any decrease therein.

■ A similar observation applies to the defendant's contention that added financial obligations resulting from his remarriage should redound to his benefit herein. It is usually said that subsequent obligations voluntarily acquired should not reduce obligations under a prior divorce decree. While this is the primary and fundamental rule, it is likewise not absolute, but is still another factor which may be considered in determining what is equitable and practical under the total circumstances.[5]

■ As opposed to defendant's insistence that the trial court should have modified the decree, it is appropriate to have in mind that the burden of persuading the trial court that there has been such a change in circumstances as to justify such modification rests upon him;[6] and that the same rules of review apply in supplementary proceedings, as in original divorce matters; that is, that we survey the record in the light favorable to the findings and determination made by the trial court; and that we do not interfere therewith unless it appears that the evidence clearly preponderates against his findings or that he abused his discretion.[7]

Upon the basis of what has been said herein, we are not persuaded that the ruling of the trial court should be overturned. Costs to plaintiff (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

*Hampton v. Hampton,* 86 Utah 570, 47 P.2d 419 (1935).

5. 24 Am.Jur.2d, Divorce & Separation Section 689; *Reed v. Reed,* 128 Cal.App.2d 786, 276 P.2d 36 (1955).

6. *Allen v. Allen,* 25 Utah 2d 87, 475 P.2d 1021 (1970); *Sorenson v. Sorenson,* 20 Utah 2d 360, 438 P.2d 180 (1968).

7. *Hansen v. Hansen,* 537 P.2d 491 (Utah 1975); *Mitchell v. Mitchell,* 527 P.2d 1359 (Utah 1974).