Deborah **MARTINEZ,** Plaintiff and Appellant,

v.

**Ed V. MARTINEZ,** Defendant and Respondent.

No. 17714.

Supreme Court of Utah.

Aug. 26, 1982.

David S. Dolowitz, of Parsons, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

Paul H. Liapis and Kent M. Kasting of Gustin, Adams, Kasting & Liapis, Salt Lake City, for defendant and respondent.

HOWE, Justice:

This is an appeal from a modification of a decree of divorce changing custody of the minor child of the parties from the plaintiff (mother) to the defendant (father).

The parties to this action, Deborah Martinez (now Feller) and Ed V. Martinez, were married on June 6, 1975. One child, Melissa Ann, was born on August 14, 1977. On March 20, 1979 in an uncontested divorce, custody of Melissa was awarded to her mother. Thereafter, the defendant married Susie Martinez on May 1, 1980 and plaintiff married Lenus V. Feller on September 14, 1980.

On September 8, 1980 the defendant filed a petition to modify the decree of divorce by changing the custody from the plaintiff to the defendant. At that time, the trial court entered a temporary restraining order placing temporary care of the child with the defendant. At a hearing held 10 days later, the trial court ordered a custody evaluation, pending which he left custody with him.

Following a trial, the court below modified the decree of divorce to provide that the defendant should have custody of the child subject to reasonable visitation by the plaintiff. She appeals and contends that the trial court abused its discretion in finding that the best interests of the child would be served by an award of her custody to the defendant. A review of the trial record, however, reveals that while the evidence was conflicting in some particulars, competent evidence was adduced from which the trial court could have found that there had been a material change of circumstances since the entry of the decree of divorce, *Hogge v. Hogge,* Utah, 649 P.2d 51 (1982) and that now the defendant's home provided a more wholesome and stable environment for the child. We find no abuse of discretion warranting reversal. *Jorgensen v. Jorgensen,* Utah, 599 P.2d 510 (1979). That conclusion is based upon the following evidence.

Following the divorce, the plaintiff and her child lived together and developed a normal relationship. Plaintiff was a good housekeeper and cared well for the child. About September 1979, the plaintiff commenced cohabiting with Mr. Feller. In the spring of 1980 he became unemployed and problems surfaced. Quarrels between him and the plaintiff became frequent, one of which resulted in Feller ripping off the door of a room next to a room where Melissa was sleeping. The plaintiff testified that he did not ever hit her, that she endeavored to avoid fighting in front of Melissa and that Melissa had a good relationship with Feller. He had been a user of marijuana and "speed" for a number of years but his use now was about once per month. The plaintiff and Feller changed residences often. Following the quarrels, the plaintiff sometimes ordered Feller out of the house and he would leave for short periods. Finally, in August 1980, the plaintiff and Melissa went to the home of her sister, Mrs. Cedarbloom, to stay. While staying there, the plaintiff, according to her sister, became "stoned and drunk." She admitted that she

used marijuana but claimed not to have done so in front of the child. She maintained that this use did not impair her ability as a mother. When she moved in with her sister, she brought with her six or eight potted marijuana plants. She admitted to others that she had a poor relationship with Feller, that he had a drug problem and that he was "lousing up" Melissa's life. Mr. Cedarbloom became concerned with the situation and contacted the defendant who came and took Melissa to his home. Plaintiff testified at the trial, some five months later, that her marriage was then "very good."

Several witnesses testified that they observed Melissa between the spring of 1980 and August when she went to reside with her father and that she was nervous, unsure of herself, unhappy and cried frequently. She commented on the strife between her mother and Feller and expressed her dislike of it. Witnesses testified that the child, after moving in with her father, seemed calmer and happier and that she had established a good relationship with her stepmother, Susie.

We find no reason to upset the Findings and Conclusions of the lower court in light of the undisputed evidence that the plaintiff had an unstable relationship with Feller, punctuated with outbursts of argument and violence to the point where plaintiff and her child had to seek refuge away from him. It was further admitted that both plaintiff and Feller were at least occasional users of drugs in their home. They had lived together without the benefit of marriage for nearly a year, also in violation of law. They did not marry until after Melissa's temporary custody had been given to the defendant.

In contrast to this environment, the defendant could provide the child with a home without any of these detriments. There was no dispute over the fact that he had a permanent home, a happy marriage, a good relationship with his family and stable employment. In view of the problems in the plaintiff's marriage, we think that it is significant that Feller, who would be living with Melissa were custody of her to remain with her mother, did not testify and thereby offer the court firsthand assurance of his feelings toward Melissa and a commitment to provide a stable and happy home for her.

■ Plaintiff assails the trial court's conclusions because much of the testimony which favored that custody be awarded to the defendant came from her mother, sister and brother-in-law who admitted a strong dislike of Feller. Plaintiff also testified that she and her mother did not have a good relationship with each other as the plaintiff was growing up, and that now plaintiff's mother "spoils" Melissa when they are together. Plaintiff further notes that the only witness who was not a member of the family or a friend of one of the parties who had been in contact with Melissa on a regular basis, was Kay Davis, a babysitter. She testified that Melissa was a happy and well adjusted child in her mother's home. We agree with the plaintiff that Mrs. Davis's testimony was forthright and was not tainted by personal family feelings; at the same time, it was not only within the province of the trial court but also its duty to weigh and sift her testimony together with other testimony and evidence which did not support custody remaining with the plaintiff. There was nothing so compelling about Mrs. Davis's testimony that we can, as a matter of law, hold that the trial judge was required to accept and follow it in preference to other evidence.

■ The same can be said of the trial court's failure to follow the recommendation of an evaluation made at the request of the court by a clinical psychologist and a certified social worker. One of them believed that while both the plaintiff and the defendant were capable of rearing Melissa successfully, Melissa was more strongly attached to her mother; in observing Melissa, both at her mother's and at her father's homes, he thought that there was considerably more physical contact and affection between Melissa and her mother and that the child was brighter, more spontaneous and happier in her mother's presence. "In comparison, Melissa acted like a visitor at

her father's home." The other evaluator found no substantial outstanding psychopathology in either set of parents but his testing revealed that plaintiff and Feller were more stable. The trial court in its memorandum decision noted these recommendations, but declined to follow them because it concluded that the recommendations were outweighed by the other evidence which we have detailed above. The memorandum decision notes that "The more objective and observable history and current conduct appears to the court to be a significant variance from predicted behavioral patterns indicated by testing."

We find no abuse of discretion by the trial court in its declining to follow the recommendation of the evaluators. The trial judge noted that he had interviewed Melissa and she indicated that she loved both her mother and father. At the time the evaluation was made Melissa had only been away from her mother a few months. It is not surprising that she might show more warmth to her mother than she would to her father (with whom she had not lived for several years) and to his second wife (with whom Melissa had not previously lived). There simply may not have been enough time for strong bonding to have occurred in the new home.

Plaintiff charges that an exchange which took place between the plaintiff and the trial court caused the court to lose its objectivity in evaluating the question of custody. The exchange consisted of a series of questions asked the plaintiff about her use of marijuana and its effect upon the plaintiff and the child—also about the quarrels between the plaintiff and Feller. We have reviewed the questions and answers and find nothing improper with them. There is no indication that the court was erroneously swayed by the plaintiff's answers to its questions. Perhaps the most concise statement of the court's reasoning and conclusions can be found in the remarks of the trial judge upon a post-judgment motion to set aside or modify the prior custody order in favor of the father. There the court said, "The court was convinced that you [plaintiff] kept the child clean. The court was convinced that you had good mothering qualities, but the court was also convinced that you had let go and for six months there were circumstances which were highly detrimental to the child and put the child at risk."

The judgment below is affirmed. Costs awarded to defendant.

HALL, C.J., and OAKS, STEWART and DURHAM, JJ., concur.