**Lola H. MITCHELL, Plaintiff, Respondent and Cross-Appellant,**

v.

**Gary A. MITCHELL, Defendant, Appellant and Cross-Respondent.**

No. 17641.

Supreme Court of Utah.

July 20, 1983.

J. Keith Henderson, Ogden, for defendant, appellant and cross-respondent.

C. DeMont Judd, Ogden, for plaintiff, respondent and cross-appellant.

DURHAM, Justice:

This is an appeal from an order of the trial court modifying a divorce decree, which order changes custody of one of the parties' two children from the respondent and cross-appellant Lola Mitchell to the appellant Gary Mitchell. Mr. Mitchell claims error in the trial court's failure to award custody of both children to him and, on cross-appeal, Mrs. Mitchell argues that both children should have been left in her custody. We affirm the judgment of the trial court.

In 1976, when the parties were divorced, Mrs. Mitchell received custody of their two daughters, Danielle and Allison, born in 1972 and 1974, respectively. After the divorce, Mrs. Mitchell moved to Texas with the two girls. In June of 1978, Mr. Mitchell picked up both girls for a regularly scheduled summer visit. During that visitation period, Mr. Mitchell caused to be issued an Order to Show Cause seeking a change of custody. Before that request for a change could be heard, Mr. Mitchell disappeared with the two children, and remained out of the state of Utah with them from August of 1978 until June of 1979. In July of 1979, a hearing on Mr. Mitchell's Order to Show Cause was held before a juvenile court judge, to whom the case had been referred by the district court pursuant to U.C.A., 1953, § 78–3a–16 (Supp.1981). At the conclusion of that hearing, the court issued a memorandum decision which was, after numerous objections and hearings, reduced to a final order and signed on May 15, 1980. By that order, the court granted temporary custody of Danielle to Mr. Mitchell and temporary custody of Allison to Mrs. Mitchell for a one-year period beginning in July of 1979. This ruling was based on a finding, set forth in the memorandum decision and incorporated by reference in the order, that a substantial change of circumstances had occurred since the entry of the divorce decree.

The court detailed the events that occurred since the divorce which support that conclusion: (1) the stress and emotional trauma inflicted on the children by their warring parents and the vindictiveness openly expressed between them, (2) Mrs. Mitchell's removal of the children from Utah, (3) Mr. Mitchell's "kidnapping" of the children for nearly a year and his efforts to establish himself as the sole parent figure, and (4) what the court described as an "intensification" of certain unfortunate problems in the parties' parenting styles, with Mrs. Mitchell having become more authoritarian and Mr. Mitchell having become more permissive in dealing with the children. The court's decision emphasized that the combined effect on Danielle of all of these circumstances, as of July, 1979, had been to make it undesirable for her to remain in the custody of Mrs. Mitchell, mainly because of her extreme attachment to her father and the disruptive effect of severing that de facto custodial relationship. Allison, on the other hand, was viewed as being adequately bonded to either parent, and the court expressed its conviction that stability in her continued placement with her mother was beneficial in view of her age and developmental stage. The court's order required the parties to obtain counseling for both themselves and the children. In addition, the court appointed a neutral expert to undertake a custody evaluation and to submit a report before the final hearing on custody. The court also found that Mr. Mitchell was in contempt of court for his failure to return the children after visitation in 1979, and sentenced him to serve two days in jail and to perform twenty days of community service. Other matters related to child support and visitation, not relevant here, were also included in the order. Neither party sought review of this "temporary" order.

A final hearing on custody was held in October of 1980 before a different juvenile court judge, the first juvenile court judge having recused himself in the case. After the hearing, the court entered an order finding that a change of circumstances existed, that threshold issue having been decided by the previous order. The court found further that it was in Danielle's best interest to be placed permanently with her father and that it was in Allison's best interest to remain permanently with her mother. The court's findings are not lengthy, but they indicate that the judge found that Mr. Mitchell had become the primary psychological parent for Danielle, and that her attachment to him was so strong as to require her placement with him for her own well-being. Although the court noted that this attachment had occurred as a result of Mr. Mitchell's wrongdoing in keeping the children with him for an extended period of time, it found that "to require [Danielle] to be removed from her father's custody would probably have dire consequences." With Allison, however, the circumstances were found to be otherwise, and the court determined that her best interest would not be served by a change from her mother's to her father's custody. This ruling was made after an explicit finding that "Lola Mitchell and ... Gary Mitchell are both fit and proper persons to have the custody of the minor children." It was made after a review by the judge of the prior testimony in July of 1979, and after hearing additional testimony and evidence at trial.

To briefly summarize that evidence and to indicate its disputed character, we note that evidence from four experts was received in the course of the two hearings. One psychiatrist and a clinical psychologist, who examined the children after Mr. Mitchell took them from Texas, found signs of depression and developmental delay in both girls, which they attributed to Mrs. Mitchell's treatment of them. Based on one interview with Mrs. Mitchell, the same psychiatrist also determined that she was hostile, cold, controlling and inadequate to nurture the children. Another clinical psychologist, from Texas, testified that Mrs. Mitchell was warm, nurturing, intelligent and appropriate in her care of the girls. She also testified that Danielle and Allison had been severely affected by their father's actions in hiding them from their mother and

that both girls would be damaged by any attempts to make them choose between their parents. She recommended keeping the girls together in the custody of one parent, and identified Mrs. Mitchell as an appropriate parent for custody. The court-appointed expert also recommended keeping the girls together. He identified Mr. Mitchell as the "healthier" of the two parties psychologically, but noted that the kidnapping incident demonstrated poor judgment. He found that Mr. Mitchell was the "primary parent" for Danielle and "is or can become, without the presence of so much conflict, the primary parent of Allison." He therefore recommended placement of both children with Mr. Mitchell, and emphasized very strongly the need of both little girls for finality, stability, and promptness in reaching a decision.

The parties raise various issues in their briefs, but basically, each claims that the trial court's award of custody to the other was so clearly against the weight of the evidence as to constitute an abuse of discretion. Mrs. Mitchell challenges the court's finding of a change of circumstances, the reliance by the second judge on the previous judge's holding on that issue, and the weight given to Danielle's preference for her father in the custody determination. Mr. Mitchell simply claims an abuse of discretion in failing to award custody of Allison to him.

■ The record amply supports the finding of a change of circumstances, which is the threshold issue to be resolved in a modification proceeding. *See, e.g., Hogge v. Hogge,* Utah, 649 P.2d 51 (1982). Between the time of the divorce decree and the hearing on the request for modification, the children had changed their residence twice and the parties had escalated their hostilities to an alarming degree, with the children inevitably being caught in the crossfire. The Findings of Fact in the final order of custody in February of 1981 indicates that the judge at the second and final hearing incorporated and adopted the first judge's findings regarding change of circumstances. This was justified in all respects by the record before the second judge.

■ As to the custody award itself, we have reviewed the reports and transcripts of all of the experts who offered evidence in this case, and we find support therein for the decision of the trial court. This was an extremely difficult case, and there was no single "solution" which would resolve all of the conflicts and the problems created by this divorce. The trial court was in an advantaged position in dealing with the witnesses and the parties and, "[o]nly where [the] trial court['s] action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment." *Jorgensen v. Jorgensen,* Utah, 599 P.2d 510, 512 (1979). *See also, e.g., Nilson v. Nilson,* Utah, 652 P.2d 1323 (1982). Such is not the case here. As the parties point out, and we recognize, this placement is problematic for at least three reasons: the sisters are separated and have lost the support and love each can receive from the other; Mr. Mitchell has profited from an egregious act in that he has been able to so cement Danielle's ties to him that returning her to her mother's custody is virtually impossible; and, there is some evidence to suggest that Mr. Mitchell is the more stable parent and yet he has custody of only one of the children. We cannot, however, posit an alternative placement that would not be even more problematic and would not exacerbate the misery already experienced by this family. Therefore, we defer to the judgment of the court. We note that the expressed preference of Danielle was not the sole basis for the court's determination of her custody. Rather, the court appropriately considered her strong attachment as a factor, among others, in its judgment as to her best interest.

Mrs. Mitchell also asks this Court to increase the penalty assessed to Mr. Mitchell for his contempt. No authority for our power to do so is offered and we decline to interfere with the trial court's discretion on this issue. Affirmed. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.