Angie KRAMER, aka Angie Balken, Plaintiff and Respondent,

v.

Robert Michael KRAMER, Defendant and Appellant.

No. 20778.

Supreme Court of Utah.

May 15, 1987.

Rehearing Denied June 18, 1987.

Steven Kuhnhausen, Salt Lake City, for defendant and appellant.

David M. Swope, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Appellant Robert Kramer appeals from a denial of his petition to modify a child custody decree by granting him custody of his son. He claims that the trial court erred by refusing to consider the changes in his (the noncustodial parent's) circumstances in determining whether there had been a sufficient "change in circumstances" to warrant reconsidering the earlier custody award under *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982). He also contends that the trial court erred in concluding that his ex-wife's circumstances, even considered alone, had not so changed as to satisfy *Hogge* and to warrant a reopening of the custody decree. We reject both arguments and affirm.

When Robert and Angie Kramer were divorced on May 12, 1982, they stipulated that custody of their minor child, Jason, could be awarded to Angie, the mother. In the findings of fact entered by the trial court in connection with the divorce decree, Angie was found to be a fit and proper person to be awarded custody. In November of 1983, Robert filed a petition for modification of the custody decree, claiming that substantial changes in both his and his former wife's circumstances justified reopening the custody decree and transferring custody of Jason to him. Robert Kramer offered uncontested evidence showing that since the original decree, he has obtained advanced degrees in psychology and is presently employed as the director of the Salt Lake County Artec Program, that he has a new home and substantially increased income, that he and his new wife have a new child, and that both his new wife and her two children from a previous marriage have formed good relationships with Jason. On the other hand, Robert Kramer alleged that his ex-wife's new husband beats her, that she is an alcoholic, that she suffers from a narcissistic personality, that she creates animosity between Jason and appellant, that she refused to obtain treatment for Jason's alleged speech defects, and that Jason is unwashed and unkempt when Robert comes to the home for visitation. Angie Kramer's evidence contradicted Robert's allegations about her in nearly every respect.

The trial court heard and weighed the evidence and conducted an *in camera* interview of Jason. It then determined that Robert had not carried his burden of proof showing a material change in Angie's circumstances. In so ruling, the district court issued a memorandum opinion in which it discussed quite cogently the test for reopening custody decrees established by *Hogge* and *Becker v. Becker*, 694 P.2d 608 (Utah 1984). The district court concluded that under the *Hogge-Becker* standard, a decree could not be opened unless there was a showing of a change in circumstances materially affecting the custodial parent's ability or fitness to care for the child and that in making such a determination, any change in the circumstances of the noncustodial parent were irrelevant.

On appeal, Robert claims that the trial court erred in refusing to consider changes in the noncustodial parent's situation when determining whether there had been a sufficient "change of circumstances" to warrant reconsidering the initial custody question. We disagree. Under *Hogge* and *Becker*, the trial court was correct in focusing only on changes in circumstances affecting the custodial parent in deciding whether to reopen the custody decree.

*Hogge* established a two-prong test for considering requests to change custody awards, imposing the burden of proof on the party seeking change of custody. Under the first prong, the party seeking modification must show that there has been a change in the circumstances upon which the original custody award was based which substantially and materially affects the custodial parent's parenting ability or the functioning of the custodial relationship and which justifies reopening the custody question. Once a substantial change of circumstances has been established, the petitioner must show under the second prong that the requested change in custody is in the best interests of the child. *See Hogge*

*v. Hogge,* 649 P.2d at 53–54.[1] The "change of circumstances" threshold is high to discourage frequent petitions for modification of custody decrees. The test was designed to "protect the custodial parent from harassment by repeated litigation and [to] protect the child from 'ping-pong' custody awards." *Id.* This policy has been adhered to and elaborated upon in our subsequent cases dealing with change of custody matters.[2]

A central premise of our recent child custody cases is the view that stable custody arrangements are of critical importance to the child's proper development. *See, e.g., Fontenot v. Fontenot,* 714 P.2d 1131, 1132 (Utah 1986); *Shioji v. Shioji,* 712 P.2d 197, 203 (Utah 1985) (Zimmerman, J., dissenting); *Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984); *Hogge v. Hogge,* 649 P.2d 51, 55 (Utah 1982); B. Hafen, *The Constitutional Status of Marriage, Kinship, and Sexual Privacy—Balancing the Individual and Social Interests,* 81 Mich.L. Rev. 463, 473–74 (1983). The two-part *Hogge* test is founded upon that premise. *Hogge v. Hogge,* 649 P.2d at 54. No matter how well intentioned, changes in custody can do more harm than good. *See* Hafen, *supra,* at 474. For this reason, when a trial court is asked to determine whether there has been a change of circumstances sufficient to warrant reopening a custody decree, ordinarily it must focus exclusively on the parenting ability of the custodial parent and the functioning of the established custodial relationship. This was recognized in *Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984), where, in interpreting and applying *Hogge,* we held that the first step of the *Hogge* standard requires that "[t]he asserted change [in circumstances] . . .

have some material relationship to and substantial effect on *parenting ability or the functioning of the presently existing custodial relationship." Id.* at 610 (emphasis added). It is this language which the trial court in the present case quoted in its memorandum decision and relied upon in refusing to consider the changed circumstances of Robert Kramer, the noncustodial father.

Robert Kramer argues that the trial court's approach, although consistent with the language of *Becker,* is inconsistent with the facts in the earlier *Hogge* case, because there we held that a change in the circumstances of the noncustodial parent justified reopening the custody order. *Hogge v. Hogge,* 649 P.2d at 54–55. It is true that in *Hogge,* we affirmed a change of custody based upon a showing that at the time of the petition to reopen the custody question, the noncustodial mother had overcome emotional problems which emanated from the divorce and she was then able to provide a stable home for her children. However, those facts do not mean the trial court erred in the present case. In *Hogge,* the initial award of custody to the father was based primarily upon the mother's "emotional illness" which caused her to be temporarily incapable of caring for the children. *Id.* at 54. The award thus was subject to or apparently conditioned upon an improvement in her emotional circumstances. *Id.* The original award of Jason to his mother, Angie, in this case, was not conditioned upon any analogous consideration of Robert Kramer's temporary circumstances.

To appreciate fully the result in *Hogge,* it should be compared with *Mineer v. Mineer,*

<hr>

1. The two-part *Hogge* test recently has been subject to some criticism. *See Moody v. Moody,* 715 P.2d 507, 511 (Utah 1985) (Daniels, District Judge, concurring). Judge Daniels argues that the test creates a practical problem at the trial level because evidence as to the best interests of the child is difficult to separate from evidence regarding change of circumstances. However, we think the *Hogge* test is sound. Many areas of the law involve bifurcated procedures at the trial level. We do not see why this one is unduly burdensome. As this case illustrates, change of circumstances involves a very narrow

spectrum of evidence. It should not be difficult for trial courts to keep the two separate.

2. *Tuckey v. Tuckey,* 649 P.2d 88 (Utah 1982); *Martinez v. Martinez,* 652 P.2d 934 (Utah 1982); *Williams v. Williams,* 655 P.2d 652 (Utah 1982); *Mitchell v. Mitchell,* 668 P.2d 561 (Utah 1983); *Becker v. Becker,* 694 P.2d 608 (Utah 1984); *Mineer v. Mineer,* 706 P.2d 1060 (Utah 1985); *Pennington v. Pennington,* 711 P.2d 254 (Utah 1985); *Moody v. Moody,* 715 P.2d 507 (Utah 1985); *Shioji v. Shioji,* 712 P.2d 197 (Utah 1985); *Fontenot v. Fontenot,* 714 P.2d 1131 (Utah 1986).

706 P.2d 1060 (Utah 1985). In *Mineer*, we rejected the mother's plea that evidence of her improved mental condition provided a basis for reexamining the original award of custody to the father. Our decision was based on the fact that her "emotional instability was not one of the reasons that [the father] was awarded custody in the original divorce decree," and such evidence therefore was irrelevant to a showing of changed circumstances. *Id.* at 1062.

■ In essence, on its facts, *Hogge* creates only a narrow exception to the general rule spelled out more fully in *Becker*—that ordinarily the change-of-circumstances prong of the *Hogge* test must focus only on the custodial parent.[3] Any other approach will only promote "ping-pong custody awards," precisely the evil *Hogge* was intended to eradicate. *Hogge v. Hogge*, 649 P.2d at 54. As *Becker* reiterated, "The rationale is that custody placements, once made, should be as stable as possible un-less the factual basis for them has completely changed." *Becker v. Becker*, 694 P.2d at 610.

The narrow construction we place on *Hogge* is not an innovation or a change in our case law. Rather, it is consistent with the approach this Court implicitly has taken in applying the first prong of *Hogge's* change of custody test. Every case that has relied on the *Hogge* analysis in reviewing a ruling on a petition for a change of custody has been based exclusively or primarily on an evaluation of the custodial parent's circumstances.[4] In the usual case, the noncustodial parent's change of circumstances is relevant only to a determination of whether, under the second prong of the *Hogge-Becker* test, the best interests of the child warrant a shift in custody, an issue reached only after a change of custodial circumstances has been found and the custody issue has been reopened.[5]

3. Of course, even if the decree was essentially conditional and a change in the noncustodial parent's circumstances does justify a reopening of the custody question, events during the intervening custody period may have so solidified the child's relationship with the custodial parent that the second prong of the *Hogge* test cannot be satisfied. It is entirely proper, in applying the second prong of *Hogge*, to consider the events and developments which have occurred in the intervening period of time and to "determine de novo which custody arrangement will serve the welfare or best interests of the child." *Hogge v. Hogge*, 649 P.2d at 54. This includes, of course, "the advantage of stability in custody arrangements that will always weigh against changes in the party awarded custody." *Id. See Moody v. Moody*, 715 P.2d at 510 n. 1 (Zimmerman, J., concurring), 715 P.2d at 513 n. 2 (Durham, J., dissenting).

4. *Moody v. Moody*, 715 P.2d at 508 (nonfunctioning of joint custody arrangement under which mother had custody for nine months of the year and father for three months and mother's increased emotional instability were substantial changes in circumstances to warrant grant of full custody to father); *see Shioji v. Shioji*, 712 P.2d 197, 201 (Utah 1985) (custodial parent's extramarital sexual relationship which had substantial adverse impact upon the children was material change in circumstances which justified reopening the custody question); *Pennington v. Pennington*, 711 P.2d 254, 256 (Utah 1985) (noncustodial parent's recovery from physical and emotional problems along with remarriage did not constitute material change in circumstances); *Mineer v. Mineer*, 706 P.2d 1060, 1063 (Utah 1985) (noncustodial parent's regaining of emotional stability was not substantial change in circumstances sufficient to reopen custody question where custody decree was not based upon mother's emotional instability, but upon father's close affinity with child); *Mitchell v. Mitchell*, 668 P.2d 561, 564 (Utah 1983) (the children's being caught in the middle of the parents' increasing hostilities, two residence changes by the custodial parent, and one child's becoming very attached to the noncustodial parent were sufficiently material changes in circumstances to warrant the change of custody granted); *Williams v. Williams*, 655 P.2d 652, 653 (Utah 1982) (custodial parent's conception of child out of wedlock by another man and four of the seven children's expressed preferences as to which parent they wanted to live with were material changes sufficient to reopen the question of custody); *Martinez v. Martinez*, 652 P.2d 934, 936 (Utah 1982) (custodial parent's subsequent cohabitation with another man, her violent arguments with him, and their frequent drug abuse were sufficiently material changes in circumstances to warrant a change of custody); *Tuckey v. Tuckey*, 649 P.2d 88, 90 (Utah 1982) (evidence that custodial mother took children to bars and exposed them to sexual acts between her and her boyfriend supported allegation of sufficiently material changes in circumstances to justify reopening the custody question).

5. The concurring opinion of Justice Howe discusses exceptional situations where a change in the circumstances of the noncustodial parent may be relevant to a determination of whether

Robert Kramer's other argument on appeal is that the trial court abused its discretion in finding that alleged changes in the mother's circumstances did not satisfy the first prong of the *Hogge-Becker* test and did not warrant reopening the decree. It is the trial court's prerogative to hear and weigh the conflicting evidence and to make findings of fact. We will not upset such findings when they are supported by substantiated record evidence. *Fontenot v. Fontenot*, 714 P.2d 1131, 1132 (Utah 1986); *Shioji v. Shioji*, 712 P.2d 197, 201 (Utah 1985); *Mineer v. Mineer*, 706 P.2d 1060, 1062 (Utah 1985); *Nilson v. Nilson*, 652 P.2d 1323, 1324–25 (Utah 1982); *Turner v. Turner*, 649 P.2d 6, 8 (Utah 1982); *Fletcher v. Fletcher*, 615 P.2d 1218, 1222 (Utah 1980); Jorgensen v. Jorgensen, 599 P.2d 510, 511–12 (Utah 1979); *Hunsaker v. Fake*, 563 P.2d 784, 786 (Utah 1977); *Carter v. Carter*, 563 P.2d 177, 179 (Utah 1977). Robert's evidence of Angie's alleged unsuitability as a parent was contradicted by Angie. The trial court resolved the questions of fact in favor of Angie. There is ample record evidence to support the trial court's findings. Therefore, this point of the appeal is without merit.

The judgment below is affirmed.

DURHAM, J., concurs.

STEWART, Associate Chief Justice (concurring in the result):

In *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), we adopted the two-step standard that must be met for a trial court to change the custody of a child. It is a useful standard if applied with sensitivity to the interests involved.

Initial custody awards must be based on the best interests of the children. Utah Code Ann. § 30-3-10 (1984). Custody changes must also be made on the same basis, § 30-3-5; *Hogge*, 649 P.2d 51, 55 (construing § 30-3-5), but a judge in a change-of-custody proceeding must necessarily take into account, in determining the best interests of the child, the proposition that a child should not be uprooted from an established, well-functioning relationship, except for strong and good reasons. Thus, *Hogge* implements § 30-3-5.

The purpose of the changed circumstances requirement is twofold. First, it prevents an unnecessary drain on judicial resources by repetitive litigation of the same issue when the result would not be altered. Second, and more important, the requirement is intended to ensure sufficient stability in children's lives to enable them to develop relationships and a sense of familiarity with their surroundings that enhance their sense of security and self-identity, enabling them to find appropriate role models after which to pattern their lives and to develop the ability to give and receive love, a necessary requirement for achieving full potential as human beings.

No good, however, can come from preserving stability in a parent-child relationship that is destructive, especially when another parent might have a positive influence on the child. The nature of the parent-child relationship may never be discovered by the trial judge if he or she rigidly limits a hearing for a change in custody to determining whether there are changed circumstances, without any regard for how well the child is doing under the established custody relationship. Focusing only on the alleged changed circumstances of one or the other of the parents may result in great harm to a child. That does not mean that a change of custody should be made when it is shown that one parent is marginally better than another, but it does mean that a trial judge should not focus exclusively on factors apart from the best interests of the child and ignore all evi-

the custody issue should be reopened. We agree with Justice Howe that the general rule outlined above is not so rigid as to preclude consideration of such changes in every case. However, as noted above, cases in which the general rule should be departed from would certainly be the exception.

Justice Stewart's concurring opinion points out that it is harmful to "preserv[e] stability in a parent-child relationship that is destructive" and that a court should not ignore "how well the child is doing under the established custody relationship" in conducting a hearing on changed circumstances. An inquiry into the effects on the child of the established custodial relationship as it has developed over time is an entirely proper focus for a change-of-circumstances inquiry under *Becker* and *Hogge*.

dence pertaining to the child's welfare in a hearing on changed circumstances.

Indeed, in my view, the *Hogge* analysis does not necessarily preclude a trial judge, when determining whether there are changed circumstances, from considering evidence concerning the child's best interest. Judge Daniels said as much in his perceptive concurring opinion in *Moody v. Moody*, 715 P.2d 507 (Utah 1985).

I fear, however, that this Court's strong emphasis on stability is reaching the point where it has been inappropriately severed from the underlying reason that supports the very principle of stability itself, i.e., the need to ensure that custody awards are in the best interests of the children involved.

I agree that the change of circumstances of the noncustodial parent in this case is not dispositive. I concur with what the trial court did because it did not blindfold itself to the circumstances in which the child was being reared.

I also concur in the observations made by Justice Howe in his concurring opinion.

HOWE, Justice (concurring in the result):

I concur in the result, but write to express my concern that we not adopt a rule which is too rigid in permitting trial judges to focus only on changes in circumstances of the custodial parent. While I agree that many times this rule will serve the best interests of the child, there are times when it may work an opposite result. The majority cites and discusses the facts of *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), where we properly focused on changes in the circumstances of the noncustodial parent, reasoning that her deficiencies were only temporary and had been corrected. There are other circumstances, as well, where the child's best interests would be served by looking at a change of circumstances of the noncustodial parent. For example, sometimes custody contests result in the court's finding that both parents lack in parenting ability and that both of them are only marginally fit and proper. The court is given a hard choice and picks "the lesser of two evils." Later, the circumstances of the noncustodial parent improve. He or she may remarry and enjoy a stable relationship. Bad personal habits may be overcome and financial conditions improved. A "turnaround" may be made in his or her life. In such an instance, a trial court should not turn a deaf ear to these changes and allow the child to remain in a home where the custodial parent remained marginal.

I have somewhat of the same concern in cases where a divorce decree and custody of a child is obtained by default. In such instances, there is no determination made by the court as to which parent would be superior in raising the child. Too rigid an application of the rule advocated by the majority would forever lock a child into the custody of one parent or the other where there has been no determination on the merits of parenting ability of either parent and custody has been awarded only because of the default of one parent in failing to oppose the complaint of the other. A child should not be subjected to spending the rest of his or her minority in an inferior environment because of the inaction of one parent at the time custody is awarded. Many people at the time of divorce are at a low ebb in their lives. Finances are strained, and emotions run high. Many are so discouraged that they seek the easy way out. Rules on custody should not be adopted which are so inflexible that they do not make allowance for these unfortunate realities.

The majority writes: "No matter how well intentioned, changes in custody can do more harm than good." That statement may be true much of the time, but there are examples which I have outlined where the opposite is true. The best interests of the child should never be lost sight of, and rules on change in custody should not be so rigid that this overarching principle is not followed.

I also concur in Justice Stewart's concurring opinion.

HALL, C.J., concurs in the concurring opinion of HOWE, J.