**Laura Lee Bloxham FULLMER, Plaintiff and Appellant,**

v.

**Brian Keith FULLMER, Defendant and Respondent.**

No. 870499–CA.

Court of Appeals of Utah.

Sept. 16, 1988.

Claudia Laycock (argued), Aldrich, Nelson, Weight & Esplin, Provo, for plaintiff and appellant.

Wayne B. Watson (argued), Watson & Seiler, Provo, for defendant and respondent.

## OPINION

Before BILLINGS, GARFF and GREENWOOD, JJ.

BILLINGS, Judge:

This is an appeal from an order of the district court granting respondent's petition to modify the parties' divorce decree. The trial court found a change in circumstances which substantially and materially affected appellant's parenting ability and which justified reopening the custody issue. The trial court then concluded that it was in the best interests of the parties' minor son to transfer physical custody to respondent. In addition, the court awarded respondent the income tax exemption for the minor child, and set a new child support amount. We reverse and remand.

Appellant Laura Fullmer and respondent Brian Fullmer were married on November 22, 1980. Their only child, Dagin, was born on May 19, 1983. Appellant filed a complaint for divorce on September 17, 1984. Under the May 19, 1985 stipulated divorce decree, appellant was awarded custody of Dagin. Dagin was to live with appellant for nine months of the year and spend the summers with respondent. The decree also awarded respondent liberal visitation rights with Dagin. Respondent was ordered to pay appellant $200 per month in alimony and $150 per month in child support. The decree did not address which party could claim the dependent income tax exemption for Dagin.

Prior to the parties' divorce, appellant worked part-time. At the time of the divorce, appellant worked part-time and was enrolled in school, attending one to four hours a day. Immediately after the parties' divorce, respondent married Lynda

and their daughter was born four months later.

After the divorce, appellant was forced to seek full-time work because she was unable to financially support herself and Dagin on the court-ordered $350 per month alimony and child support, which appellant asserts she received irregularly. Originally, appellant planned to move to New York City to seek employment. The night before she was to move to New York, appellant was served with respondent's petition to modify the child custody provisions of the decree together with a restraining order prohibiting her from leaving Utah. By this time, appellant had quit her job, moved out of her apartment, and sold most of her belongings. Consequently, after being served with respondent's petition, appellant was compelled to arrange temporary living accommodations and used the funds she had saved for her move to New York to retain an attorney. At first, appellant and Dagin resided with a friend of appellant's in Provo, Utah. Thereafter, appellant resided with her parents. Because her parents were remodeling their home, appellant asked respondent and his wife, Lynda, to temporarily care for Dagin in their home. Once appellant got on her feet financially, she moved to an apartment in Salt Lake City where she currently resides with Dagin.

Expecting to move to New York, appellant quit her part-time job at the Brick Oven Restaurant in Provo, Utah. Thereafter, she worked part-time for Nelson Laboratories in Salt Lake City for a gross monthly salary of $444. Because her salary and sporadic support payments were insufficient to support herself and Dagin, appellant accepted a full-time position as a legal receptionist for a law firm in Salt Lake City. Her gross monthly salary is now $950. As a result of her working full-time, appellant placed Dagin in a day care center located in Salt Lake City.

Respondent continues to be employed by WICAT Systems, Inc., where his current gross monthly salary is $2,630. Respondent's present wife is not employed outside the home and cares for their four year old daughter.

Since the parties' divorce in May 1985, Dagin has spent a substantial amount of time with both of his parents. The parties have cooperated in sharing time with Dagin and there has been no interference with the liberal visitation provided in the decree. Per the parties' stipulated divorce decree, respondent had physical custody of Dagin during June, July, and August 1985. In September 1985, appellant had physical custody of Dagin, and respondent exercised his regular visitation rights. In October, November, and December respondent had physical custody of Dagin more than half of the time. Respondent, because appellant had a difficult quarter at school, had primary physical custody of Dagin in January, February, and March 1986. During April and May 1986, appellant had physical custody of Dagin, and, as originally agreed, respondent had physical custody of Dagin June, July, and August 1986. Neither party nor the evaluator claim the liberal sharing of time with Dagin has been a problem in his development. Respondent's petition to modify the child custody provisions of the parties' divorce decree was filed in September 1986.

The evidence was presented to the trial court by proffer, with no witnesses testifying. The parties' respective counsel merely summarized what the witnesses would have said, had they testified. The parties stipulated to the receipt of two child custody reports. The most recent evaluation determined that both appellant and respondent were suitable parents. The evaluator believed Dagin was well adjusted and noted no negative allegations concerning appellant's care of Dagin. He further found that Dagin responded appropriately to both parents. The evaluator characterized his recommendation as a "close call" but nonetheless, concluded that the trial court should grant respondent's petition to modify and recommended that respondent be awarded physical custody of Dagin because of respondent's solid employment and more stable environment.

After hearing this "evidence," the trial judge remarked from the bench that he believed both parents were "intelligent, bright, loving, caring people." The trial judge was impressed by the fact that respondent had remarried and had established a stable home. The trial judge focused on the fact that appellant had obtained full-time employment and, as a result, had placed Dagin in a full-time day care center. In the judge's opinion, "[d]espite how good that day care center is, it is not a substitute for a mother in the home. I don't believe it can be or ever will be." Accordingly, the trial judge entered the following findings of fact:

The Court finds a material change in circumstances primarily due to the following:

a. The change in [appellant's] work schedule to full-time employment, necessitating the placement of the minor child, Dagin, in a day care center also on a full-time basis.

b. The remarriage of [respondent] and his creation thereby of a stable home environment where the child can be cared for by a stepmother who is a homemaker, not working outside the home, during those times when the father is working.

The Court having considered all appropriate factors related to the best interests of the child finds that the best interests of the child will be presently served by being placed with his father.

There was no specific finding that either parent was "fit and proper." The trial judge, because this case was a "close call," ordered the custody decision reviewed in one year.

The trial judge did not increase the alimony award, as requested by appellant in her counter petition, but reserved the alimony issue for review in one year. The court stated "[t]he alimony will remain the same. After one year I will give consideration to cutting off alimony because I don't think this is a situation that requires alimony to go on forever." Furthermore, the court concluded that respondent should not pay child support while he had physical custody of Dagin, but that he should pay appellant $250 per month during the three summer months when appellant would have physical custody of Dagin. The court awarded respondent, as the primary custodial parent, the right to claim the 1987 and 1988 income tax exemptions for Dagin.

The modification of custody order was stayed by order of this Court on November 12, 1987 pending appeal. Appellant appeals from each of these determinations.

## STANDARD OF REVIEW

■ At the outset we emphasize that all of the evidence offered below was by proffer. The parties stipulated to this procedure.[1] Consequently, we are in as good a position to review the proffer as was the trial court, as no assessment of witness credibility occurred below. Therefore, we review the proffered facts and draw our own legal conclusions therefrom. *See Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1136 (Utah Ct.App.1987), *cert. granted; see also Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651 (Utah 1988). After viewing the evidence in this light, the trial court's decision will not be disturbed absent a showing of an abuse of discretion or manifest injustice. *See Kramer v. Kramer*, 738 P.2d 624, 628 (Utah 1987); *Fontenot v. Fontenot*, 714 P.2d 1131, 1132–33 (Utah 1986) (per curiam).

1. Although the parties stipulated that the testimony could be presented by proffer, and appellant does not argue that she was entitled to an evidentiary hearing, we note that an evidentiary hearing with all witnesses testifying would have been preferable. *See Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1136 (Utah Ct.App.1987), *cert. granted.* In a child custody case, we are convinced that witness demeanor and credibility are critical in ascertaining whether there has been a change of circumstances and what is in the best interests of the child. Any award of physical custody based solely upon what an attorney states a witness would have said and documentary evidence not subject to cross-examination is tenuous at best and subject to close scrutiny on appeal. Such deficiencies undermine the vitality of the trial court's determinations.

## CHILD CUSTODY

■ In order to modify child custody provisions of a divorce decree, the Utah Supreme Court requires trial courts to engage in a two-step bifurcated process. First, the court must consider if there has been a substantial change in the custodial parent's circumstances justifying a re-examination of the prior custody award. Second, and only if that finding is in the affirmative, may the trial court examine what placement is in the best interest of the child.

We conclude the trial court erred in (1) not adhering to the bifurcated procedure, (2) not focusing on appellant's change of circumstances and its effect on Dagin, (3) considering "changes" which were within the contemplation of respondent at the time of the divorce or created by his own actions, and (4) finding that the placement of Dagin in an admittedly excellent day care center was a change of circumstances justifying a re-examination of what custody placement would be in Dagin's best interest.

In delineating the required bifurcated procedure, the Utah Supreme Court states:

In the initial step, the court will receive evidence only as to the nature and materiality of any changes in those circumstances upon which the earlier award of custody was based. In this step, the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody. The trial court must make a separate finding as to whether this burden of proof has been met. If so, the court, either as a continuation of the same hearing, or in a separate hearing, will proceed to the second step. However, where that burden of proof is not met, the trial court will not reach the second step, the petition to modify will be denied, and the existing custody award will remain unchanged.

*Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982). Under this "change of circumstances" step, the "threshold is high to discourage frequent petitions for modification of custody decrees." *Kramer v. Kramer*, 738 P.2d 624, 626 (Utah 1987). This approach "protect[s] the custodial parent from harassment by repeated litigation and protect[s] the child from 'ping-pong' custody awards." *Hogge*, 649 P.2d at 53–54.

In the instant case, the trial court did not adhere to the mandated bifurcated procedure. First, the court failed to receive evidence relevant only to the "nature and materiality of any changes" in the circumstances upon which the previous child custody award was based. Second, the court failed to enter a separate finding that a substantial and material change in appellant's circumstances warranted reopening the custody award. Rather, the court received *all* evidence relevant not only to the "change in circumstances" step, but also the "best interests of the child." Such an approach has been consistently rejected by our supreme court. As Justice Zimmerman noted:

[W]e think the *Hogge* test is sound. Many areas of the law involve bifurcated procedures at the trial level. We do not see why this one is unduly burdensome. As this case illustrates, change of circumstances involves a very narrow spectrum of evidence. It should not be difficult for trial courts to keep the two separate.

*Kramer*, 738 P.2d at 626 n. 1.

The trial court not only failed to follow the required procedure but also abused its discretion in finding that the changes in circumstances were sufficient to reopen the child custody issue based upon the evidence in the record. In the instant case, the trial court found a change in appellant's circumstances based upon two facts:

a. The change in [appellant's] work schedule to full-time employment, necessitating the placement of the minor child, Dagin, in a day care center also on a full-time basis.

b. The remarriage of [respondent] and his creation thereby of a stable home

environment where the child can be cared for by a stepmother who is a homemaker, not working outside the home, during those times when the father is working.

■ In determining whether there has been a change of circumstances warranting the reopening of the child custody provisions of a divorce decree, trial courts are instructed to focus exclusively on an evaluation of the custodial parent's change of circumstances and its effect on the child. *Kramer*, 738 P.2d at 626.

> The asserted change must ... have some material relationship to and substantial effect on parenting ability or the functioning of *the presently existing custodial relationship*. In the absence of an indication that the change has or will have such effect, the materiality requirement is not met. Accordingly, it is not sufficient merely to allege a change which, although otherwise substantial, does not essentially affect the custodial relationship.

*Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984) (emphasis added). A change in the noncustodial parent's circumstances is relevant only under the second prong of the *Hogge* test, namely whether it is in the best interests of the child to transfer custody and this issue is reached only after a change in the custodial parent's circumstances has been adequately established to reopen the custody issue. *Id.*

Thus it was error for the trial court to focus on respondent's re-marriage and the consequent circumstances of a stepmother as a full-time homemaker in finding a change of circumstances.

In reaching this conclusion, we are mindful of the two concurring opinions written by Justice Stewart and Justice Howe in *Kramer.* These concurring opinions advocate cautious application of the *Kramer* analysis, arguing that focusing exclusively on the existing custodial arrangement may cause more harm than good and that "a trial court should not turn a deaf ear to these changes and allow the child to remain in a home where the custodial parent remain[s] marginal." *Kramer*, 738 P.2d at 629 (Howe, J., concurring in the result).

*See also id.* at 628 (Stewart, J., concurring in result). Addressing these concerns, we note that in the instant case the original custody award was not contested by respondent. Moreover, the child custody evaluator concluded that appellant was an excellent custodial parent. No allegations calling into question appellant's ability to physically or emotionally care for Dagin were made. The evaluator found that Dagin adequately responded to both parents and that Dagin seemed comfortable with either. Dagin was found to be well-adjusted to the circumstances and bonded in an acceptable way to both parents. There was no allegation that the existing custodial arrangement caused a deterioration in Dagin's mental or physical health. The trial court reached similar conclusions remarking that both parents were "intelligent, bright, loving, caring, people." Thus, adhering to the procedure of focusing only on appellant's change of circumstances would not leave Dagin in a "marginal situation."

■ Furthermore, the alleged change of circumstances relied upon by the trial judge were within the reasonable contemplation of the respondent at the time he stipulated to the custody arrangement and thus not legally cognizable. Appellant and respondent stipulated that appellant should be awarded physical custody of Dagin. Merely sixteen months later, respondent filed his petition for modification to reopen the child custody issue. It is reasonable to assume that at the time the stipulation was entered both appellant and respondent knew that appellant would have to work full-time and place Dagin in day care as it would be impossible for her to support herself and Dagin on $150 per month in child support and $200 per month in alimony. It is also reasonable to assume that respondent would remarry soon after the parties' divorce and have another child as Lynda, his second wife, was pregnant with respondent's child before the parties' divorce was final. Given respondent's awareness of the circumstances at the time he voluntarily entered into the stipulation which awarded appellant custody, we find

his petition to modify custody the very type of litigation and harassment from which our supreme court has attempted to protect custodial parents.[2] Further, as previously noted, the emphasis on respondent's change in circumstances is contrary to law. *Kramer*, 738 P.2d at 627.

After a careful review of the record, focusing on appellant's circumstances as required, we are firmly persuaded that the trial court abused its discretion in changing Dagin's custody. Appellant's housing accommodations and employment were unstable immediately after the filing of the petition for modification and prior to the lower court proceedings. However, any changes in her circumstances were, in large part, a consequence of respondent's conduct. Respondent filed his petition to modify the custody provisions of the divorce decree on the eve appellant was scheduled to move to New York where she purportedly had a new job waiting. By this time appellant had moved out of her apartment, sold most of her belongings, and quit her part-time employment. Therefore, she had no place to live and no job when served with the petition, and had no choice but to arrange temporary living accommodations until she determined her options and re-established herself financially. Any money she had saved in anticipation of her move was used to retain an attorney to defend against the petition. Furthermore, appellant had no choice but to work full-time as she was unable to support both Dagin and herself on the court-ordered alimony and child support, totaling only $350 per month, which, in any event, she received sporadically. She now is stable in her job and home in Salt Lake City.

Respondent cannot use the circumstances he created to reopen the child custody issue. To hold otherwise would provide incentive to noncustodial parents to create havoc in the custodial parent's circumstances in order to justify reconsideration of the custody award.

We also find that the trial court abused its discretion by relying on Dagin's placement in full-time day care to change his custody placement. Appellant had no choice but to work full-time in order to adequately support Dagin and herself.[3] In this era, more and more children are raised by single parents who must work. Moreover, financial burdens often compel both parents of an existing family unit to work full-time. These couples, like the single parent, use day care. Day care is a reality and we find no basis in the facts of this case or any scholarly authority cited to support the trial court's conclusion that day care is per se less advantageous than a stepmother custodian. The weakness of the trial court's finding is further compounded by the fact that the trial court admitted that the day care center in which Dagin was placed was "first rate."

Furthermore, we note that in the instant case both *natural* parents work full-time. Consequently, the trial court's decision to transfer custody to respondent was, in essence, a transfer of physical custody to Lynda, Dagin's stepparent, an inappropriate result since there were no legally cognizable changes in appellant's circumstances.

We also find the trial court abused its discretion when it set the child custody issue for review in one year. As has been repeatedly emphasized, in child custody litigation, trial courts are instructed to attempt to ensure sufficient physical and emotional stability in children's lives to prevent "ping-pong" custody awards. Dagin's custodial placement with appellant is work-

---

2. We are also persuaded that this case does not fit within the *Hogge* exception articulated in *Kramer*. There is no evidence in the record before us to suggest that the initial award of custody to appellant was premised upon respondent being temporarily incapable of caring for Dagin. No one argues that the award was "subject to or apparently conditioned upon an improvement," in respondent's circumstances. *Kramer*, 738 P.2d at 626.

3. It is anomolous for a divorced noncustodial parent to complain about a high child support and alimony award, succeed in lowering the amount, and then argue that because the custodial parent must work to support the child and him or herself there is grounds for a change in custody.

ing and there are no facts indicating it should be periodically reviewed.

In conclusion, we find no basis to support the trial court's conclusion that since the previous decree there has been a substantial and material change of appellant's circumstances sufficient to reopen the issue of custody. We reverse the order awarding custody to respondent. Dagin's custody and visitation schedule will remain as delineated in the original decree.

## CHILD SUPPORT

Appellant's next argument on appeal is that the trial court abused its discretion in awarding appellant $250 per month in child support during those months appellant has physical custody of Dagin. We reverse the trial court's determination.

"Child support awards should approximate actual need, and, when possible, assure the children a standard of living comparable to that which they would have experienced if no divorce had occurred." *Peterson v. Peterson*, 748 P.2d 593, 598 (Utah Ct.App.1987). Trial courts have ample discretion to "fashion such equitable orders in relation to the children and their support as is reasonable and necessary, considering not only the needs of the children, but also the ability of the parent to pay." *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985).

In the instant case, although the trial court failed to enter factual findings on this issue, no one disputes the gross monthly earnings of the parties. Respondent's gross monthly earnings at the time of the modification hearing were $2,630. Appellant's gross monthly earnings at that time, exclusive of child support and alimony, were $950. The trial court ordered respondent to pay $250 per month for each month that appellant had custody of Dagin. Under ordinary circumstances, we would uphold this determination in light of the parties' respective incomes and the fact that respondent has another child who he is legally obligated to support. However, since the trial court did not contemplate a permanent physical custody award to appellant in making the award and entered no findings as to expenses such as child care costs, we remand this issue to the trial court for consideration of the amount of the award in light of all relevant factors.

## TAX EXEMPTION

Appellant's next contention is that the trial court erred in awarding respondent the 1987 and 1988 income tax exemptions. We agree.

In 1984, Congress modified the rules allowing a parent to claim a dependency deduction for purposes of computing income taxes. 26 U.S.C. § 152(e) (1988).[4] Under the previous rules enacted in 1967, the parent who had custody of the child for "more

---

4. Under this provision, the custodial parent gets the exemption except as otherwise provided in the subsections if—

(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calander year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

Subsection 2 provides for an exception where the custodial parent releases his or her claim to the exemption and provides in pertinent part:

A child of parents described [above] shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

26 U.S.C. § 152(e) (1988).

than one-half of the calendar year" was generally allowed to claim the exemption. 26 U.S.C. § 152(e) (1967) (amended 1984, effective January 1, 1985). However, there were two exceptions to this general rule which allowed the exemption to be claimed by the noncustodial parent under the statute's contribution to support standards. The noncustodial parent could claim his or her children as exemptions if: (1) he or she was awarded the exemption under the dissolution decree and he or she paid at least $600 per year per child as support, or (2) the noncustodial parent paid at least $1,200 per year per child as support and the custodial parent failed to show that he or she provided more support than the noncustodial parent during the same calendar year. 26 U.S.C. § 152(e) (1967) (amended 1984). *See also* Hjorth, *Divorce, Taxes, And The 1984 Tax Reform Act; An Inadequate Response To An Old Problem*, 61 Wash.L. Rev. 151, 185 (1986). These exceptions were eliminated under the 1984 amendments. ·

 Under the current provisions, the custodial parent[5] is entitled to the dependency exemption and the noncustodial parent can qualify for the exemption only if the custodial parent signs a written waiver that he or she will not claim the child as a dependent. 26 U.S.C. § 152(e)(2) (1988). The only other exception, which is not applicable here, is if a qualified pre-1985 instrument provides that the noncustodial parent is entitled to the exemption of the child and that parent provides at least $600 per year for the child's support. 26 U.S.C. § 152(e)(4) (1988). *See also Martinez v. Martinez*, 754 P.2d 69, 72 (Utah Ct.App. 1988); Comment, *Domestic Relations Tax Reform*, 20 Gonz.L.Rev. 251, 278 (1984–85).

The purpose of the 1984 amendments was both to remove the Internal Revenue Service from time consuming factual disputes over which parent met the threshold support requirements, and to add certainty to the process by "allowing the custodial spouse the exemption unless that spouse

waives his or her right to claim the exemption." Deficit Reduction Act of 1984, Pub. L. No. 98–369, 1984 U.S.CODE CONG. & ADMIN. NEWS (98 Stat. 494) 697, 1139–1141.

In this case, appellant was the designated custodial parent of Dagin under the original divorce decree which provided that appellant would have physical custody of the child nine months of each year. Dagin's custodial arrangements were not changed in 1988 as this court granted appellant's motion to stay the execution of the trial court's order transferring custody. Our decision today maintains appellant as Dagin's custodial parent. Appellant has not signed a written waiver allowing respondent to claim the exemption. Thus under section 152(e), appellant, as the custodial parent, is entitled to the exemption.

Although many state courts interpreting the predecessor provisions to section 152(e) have determined that they have discretion to award the exemption in a divorce proceeding, *see generally, Davis v. Fair*, 707 S.W.2d 711, 717 (Tex.Ct.App.1986) (and cases cited therein), we agree with the courts that have concluded they do not have the authority to grant the exemption contrary to the provisions of the Internal Revenue Code. *Id.* at 718. *See also Lorenz v. Lorenz*, 166 Mich.App. 58, 419 N.W. 2d 770 (Mich.App.1988); *Valento v. Valento*, 385 N.W.2d 860 (Minn.App.1986). Accordingly, we reverse the trial court's award of the exemption to respondent.

## ALIMONY

As her final argument, appellant asserts the trial court erred in failing to increase her alimony and in reserving the right to review the alimony provision in one year.

 On appeal, we will not disturb the trial court's alimony award "unless such a serious inequity has resulted as to manifest a clear abuse of discretion." *Martinez v. Martinez*, 754 P.2d 69, 74 (Utah Ct.App.1988). The three factors trial

---

**5.** Custodial parent for purposes of section 152, means the parent who has *physical custody* of the child "for more than one-half of the calen-

dar year." 26 U.S.C. § 152(e)(1)(B) (1988) (emphasis added).

courts are to consider in fixing a reasonable alimony award are:

1. the financial conditions and need of the recipient spouse;
2. the ability of the recipient spouse to produce a sufficient self-supporting income;
3. the ability of the paying spouse to provide support.

*See Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). In light of these factors, we are not persuaded that the trial court abused its discretion in fixing the alimony award. However, we caution the trial court as to its decision that the termination of alimony would be reconsidered in one year.

While the trial court retains "continuing jurisdiction" to terminate an alimony award, under Utah Code Ann. § 30–3–5 (1988), the court must base its decision upon a substantial change in the parties' circumstances. *Id.* In order for the trial court to terminate appellant's alimony award, there must be an articulated basis for doing so; i.e., the court must be persuaded that appellant will be able to support herself at a standard of living to which she was accustomed during the parties' marriage, or that respondent is no longer able to pay. *See Olson v. Olson*, 704 P.2d 564, 567 (Utah 1985); *Rayburn v. Rayburn*, 738 P.2d 238, 241 n. 6 (Utah Ct.App. 1987); *Petersen v. Petersen*, 737 P.2d 237, 243 n. 5 (Utah Ct.App.1987).

Reversed and remanded in part, and affirmed in part. Costs and attorney fees of appeal are awarded to appellant.

GARFF and GREENWOOD, JJ., concur.