Thomas G. MAUGHAN, Plaintiff
and Appellant,

v.

Paulette LaDawn Norman MAUGHAN,
Defendant and Respondent.

No. 870589–CA.

Court of Appeals of Utah.

Feb. 22, 1989.

Timothy W. Healy, Ogden, for plaintiff and appellant.

Stephen W. Jewell, Logan, for defendant and respondent.

Before DAVIDSON, BENCH and JACKSON, JJ.

BENCH, Judge:

Plaintiff appeals the denial of his petition to modify a divorce decree that awarded custody of his son to defendant. Plaintiff also appeals the grant of attorney fees and increased child support to defendant. We affirm the trial court's ruling, but remand for a determination of attorney fees to be awarded defendant on appeal.

## FACTUAL BACKGROUND

Plaintiff Thomas G. Maughan and defendant Paulette Maughan were married in July 1982 and divorced in February 1983. At the time of their divorce, Paulette had custody of a son from a previous marriage, and was expecting another child. That child, Riley Maughan, was born in July 1983. The decree of divorce had been entered by default after the parties stipulated that Paulette was to be awarded custody of Riley and child support of $75 per month.

Four years later, Thomas brought this action seeking custody of Riley. Thomas claimed that Paulette's frequent moves, use of alcohol and drugs, promiscuity, and parental neglect of Riley justified a change of custody. Thomas alleged that Riley was often unkempt, undernourished, and unattended, and that the apartment Paulette and her children lived in was unsanitary. Thomas also claimed that Riley had been adversely affected by Paulette's lifestyle, and had been sexually abused by her boyfriend. In contrast, Thomas claimed that he was happily remarried and had a child from that marriage, that he had a stable income and residence, that he had become religiously active, and that Riley had formed close relationships with Thomas's new wife and child.

Both parties testified at trial. Paulette admitted that she had moved twelve times in the four years following the divorce, residing during that time in Wellsville, Logan, Clearfield, Brigham City, and Salt Lake City, Utah. She claimed that the frequent moves grew out of a need for steady employment and more economical housing. Paulette also testified that she had one child out-of-wedlock following the birth of Riley and was expecting another such child.

A family therapist, a sexual abuse therapist, several social workers, and other witnesses also testified at trial. The sexual abuse therapist testified that there was evidence of Riley's sexual abuse, but none showing that Paulette knew about it. Other social workers stated that they found no evidence of abuse or any indication that Riley was disturbed or had a negative relationship with his mother. A social worker who had been assigned to monitor Paulette's home testified that she saw no basis for finding the mother's care inappropriate. The family therapist testified that Thomas's situation may be more stable, but that both parents had appropriate parenting skills and strong bonding with Riley.

After hearing the evidence and interviewing Riley, the trial court concluded that there was "a great deal of conflict in the testimony regarding the defendant's supervision, child care, housekeeping, promiscuity and sexual abuse." The court then found that Thomas had not shown substantial changes in Paulette's parenting

ability or in the custodial arrangement, and denied his petition for modification of custody. The court also awarded attorney fees to Paulette and increased Thomas's monthly child support payments from $75 to $150, in view of the parties' earnings.

## CUSTODY

Proper adjudication of custody matters is "highly dependent upon personal equations which the trial court is in an advantaged position to appraise." *Smith v. Smith*, 726 P.2d 423, 425 (Utah 1986) (quoting *Johnson v. Johnson*, 7 Utah 2d 263, 267, 323 P.2d 16, 19 (1958)). The trial court must "hear and weigh the conflicting evidence" and make findings of fact. *Kramer v. Kramer*, 738 P.2d 624, 628 (Utah 1987). Unless those factual findings are "clearly erroneous" under Utah R.Civ. P. 52(a), they will not be set aside on appeal. *Kishpaugh v. Kishpaugh*, 745 P.2d 1248, 1253 (Utah 1987). Findings of fact are clearly erroneous if it can be shown that they are against the clear weight of evidence or that they induce a definite and firm conviction that a mistake has been made. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). Because the trial court is given broad discretion in making child custody awards, *Myers v. Myers*, 768 P.2d 979, 982–983 (Utah App.1989), its decision will not be disturbed absent a showing of an abuse of discretion or manifest injustice. *Fontenot v. Fontenot*, 714 P.2d 1131, 1132–33 (Utah 1986); *Fullmer v. Fullmer*, 761 P.2d 942, 945 (Utah App.1988). This discretion is limited in that it must be exercised within the confines of the legal standards set by appellate courts, and the facts and reasons for the court's decision must be set forth in findings and conclusions. *Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988); *Kishpaugh*, 745 P.2d at 1253 n. 2.

The trial court's articulate memorandum decision in this case indicates that it applied the legal standard for modifying child custody as set forth in *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), and clarified in *Becker v. Becker*, 694 P.2d 608 (Utah 1984). *Hogge* and *Becker* established a bifurcated test for reopening custody decrees: 1) the party seeking custody must prove that there has been a change in the circumstances upon which the previous custody award was based, which substantially and materially affects the custodial parent's parenting ability or the functioning of the custodial relationship; and 2) once a change has been shown, the transfer of custody must be in the best interests of the child. *Becker*, 694 P.2d at 610.

*Hogge* and *Becker* were followed in 1987 by *Kramer v. Kramer*, 738 P.2d 624 (Utah 1987). In *Kramer*, the noncustodial parent sought custody by comparing his new marriage and stable environment to the allegedly unsuitable environment maintained by the mother. Justice Zimmerman, writing for the supreme court, reaffirmed *Hogge* and its predilection for evaluating only a change in circumstances of the custodial parent:

> In the usual case, the noncustodial parent's change of circumstances is relevant only to a determination of whether, under the second prong of the *Hogge–Becker* test, the best interests of the child warrant a shift in custody, an issue reached only after a change of custodial circumstances has been found and the custody issue has been reopened.

*Kramer*, 738 P.2d at 627. In two concurring opinions, however, a majority of the court cautioned against a rigid application of the "change of circumstances" requirement. Justice Stewart recognized the utility of *Hogge* in preventing repetitive custody litigation and fostering family stability, but proposed that the preservation of stability in a destructive parent-child relationship could ultimately be more detrimental to the interests of the child. *Kramer*, 738 P.2d at 628 (Stewart, J., concurring in the result). Justice Howe suggested certain situations where application of the *Hogge* rule will work against the best interests of the child, e.g., where custody is originally grounded on temporary incapacity of one parent, where both parents at the outset have marginal parenting ability, or where custody is obtained by default divorce. *Kramer*, 738 P.2d at 629 (Howe, J., concurring in the result).

This court has since considered the impact of *Kramer* in *Fullmer v. Fullmer*, 761 P.2d 942 (Utah App.1988). Both parents in *Fullmer* were found to be "loving, caring people," but placement of the child in the noncustodial home eliminated the need for professional day care. The trial court determined that such placement was in the child's best interests and awarded custody to plaintiff. This court reversed, finding error in the failure to adhere to the bifurcated procedure of *Hogge.* We noted that even if the concerns of the *Kramer* majority were addressed, *Fullmer* still did not involve the temporary or marginal parenting situation offered as examples in *Kramer*'s concurring opinions. Rather, the petition for modification of custody was found to be "the very type of litigation and harassment from which our supreme court has attempted to protect custodial parents." *Fullmer*, 761 P.2d at 948.

In this appeal, Thomas argues that the trial court abused its discretion when it failed to find a substantial and material change of circumstances which adversely affected Riley. Thomas also claims that the concurring opinions of *Kramer* expanded *Hogge* by imposing a less rigid application of the "change of circumstances" requirement. On this basis, Thomas urges us to reverse the trial court for declining to consider, under *Hogge*'s first prong, changes in the noncustodial parent's circumstances and the child's best interests.

■ Our reading of *Hogge* and its progeny suggests that on a petition for custody modification, trial courts should carefully scrutinize the facts behind the original award of custody. If the initial award was based on a thorough examination by the trial court of the various factors pertaining to the child's welfare, a rigid application of the change-in-circumstances prong is in order. In such a case, the court has already considered the best interests of the child and made a determination consistent with that finding. Any subsequent petition for modification of custody must overcome a high threshold in order to "protect the child from 'ping-pong' custody awards" and the accompanying instability so damaging to a child's proper development. *Kramer*, 738 P.2d at 626.

■ If, on the other hand, the initial custody award is premised on a temporary condition, a choice between marginal custody arrangements, a default decree, or similar exceptional criteria, the trial court may properly focus its "inquiry into the effects on the child of the established custodial relationship as it has developed over time." *Id.* at 627 n. 5. This inquiry is necessarily less rigid because the trial court has not previously had an opportunity to make a thorough examination of the child's best interests, or, if so, has been compelled to make a choice between "the lesser of two evils." Under those circumstances, the court may accept a greater range of evidence under *Hogge*'s first prong regarding the initial custody arrangement, the events that have since transpired, and the resulting effects on the child.

■ In the instant case, Riley has been in his mother's custody since birth. The parties stipulated to that custody and obtained a decree of divorce by default. We can find no evidence in the record before us to suggest that Riley's best interests were thoroughly examined prior to the original award of custody. Accordingly, this case presents a situation not unlike those described by Justice Howe in *Kramer*. As suggested in *Kramer*, the trial court, at its discretion, would then be permitted to inquire into "the effects on the child of the established custodial relationship as it has developed over time." *Kramer*, 738 P.2d at 627 n. 5.

The trial court did this. Although the court recognized the constraints of *Hogge* and generally limited its review to evidence of a substantial change in the circumstances of the custodial parent, that review included an *in camera* interview with Riley and a comparison of the activities of the parties during and after their brief marriage. This is not the liberal admission of evidence Thomas advocates, but neither is it a most rigid application of the change-of-circumstances test. As we view the trial court record, Thomas properly received the

benefit of a less rigid application of the *Hogge* standard as advocated in *Kramer*.

Even under this less rigid legal standard, we conclude that there was no abuse of discretion in the trial court's failure to find a substantial change of circumstances. After two days of often conflicting testimony about child care and supervision, housekeeping, promiscuity, and sexual abuse, the court concluded:

> A single parent who has to take what employment they can get certainly has more difficulty as opposed to dual parents. The single parent has to arrange schedules, child care, perform all the household tasks, that are necessary. The Court does not feel that the defendant should be penalized because of this kind of a situation where she does not have the same financial abilities as the petitioner in order to provide a stable environment. The fact that the petitioner remarried making this a dual parent household is not such a substantial change of circumstances that would merit a change of custody or simply any remarriage would have the ping-pong effect on child custody.

We will not substitute our judgment for that of the trial court unless the action it takes is so flagrantly unjust as to constitute an abuse of discretion. *Wall v. Wall,* 700 P.2d 1124, 1125 (Utah 1985). In view of the substantial evidence in the record, and the proper application of the legal standard, we can find no serious inequity manifesting an abuse of discretion. The denial of Thomas's petition for modification of custody is, therefore, affirmed.

## CHILD SUPPORT

Thomas next asserts that the trial court abused its discretion by increasing his monthly child support payments from $75 to $150.

Pursuant to Utah Code Ann. § 30–3–5(3) (Supp.1988), the trial court has continuing jurisdiction to make changes in child support awards "as is reasonable and necessary." "The burden rests with the party seeking modification to show a substantial change in circumstances such as to warrant a modification." *Christensen v. Christensen,* 628 P.2d 1297, 1299 (Utah 1981). As in the modification of custody, we defer to the trial court's modification of a child support award. We will not upset the trial court's apportionment of financial responsibilities in the absence of manifest injustice or inequity that indicates a clear abuse of discretion. *Hansen v. Hansen,* 736 P.2d 1055, 1056 (Utah App.1987).

■ The record adequately supports an increase in monthly payments. Based on the evidence at trial, the court found the change in Thomas's earning capacity to be substantial. Since the divorce, Thomas has supplemented his farm income with stable employment. Even without any farm income, his gross monthly earnings are $1,240.00—up from $800 to $1,000 at the time of the divorce.[1] Paulette, on the other hand, has been unable to find steady employment; her monthly average income is less than half of his income. In view of this substantial change in circumstances, the trial court did not abuse its discretion and the child support award will not be disturbed on appeal.[2]

## ATTORNEY FEES

■ Generally, attorney fees may be recovered in Utah if provided for by statute or contract. *Cooper v. Deseret Fed.Sav. and Loan Ass'n,* 757 P.2d 483, 486 (Utah

---

1. Appellant projected a farm income loss for 1987 and includes in his reply brief supporting documents prepared after this appeal was taken. Respondent objects to the inclusion of documents not previously admitted into evidence, and moves to strike them. Because we find merit in respondent's objection, we grant respondent's motion and strike appellant's reply brief in its entirety. All briefs which are not free from irrelevant or immaterial matter may be "disregarded or stricken." R. Utah Ct.App. 24(k).

2. Both parties made reference to the Uniform Child Support Schedule implemented by the Utah Judicial Council on November 1, 1988. Even if these advisory guidelines had been in effect at the time of the judgment, the trial court would still have had the discretion to make its award of support based on individual circumstances.

App.1988). In actions for the support and maintenance of children, Utah Code Ann. § 30–3–3 (1984) provides for an award of attorney fees. This provision has been interpreted to include actions for the modification of child custody. *See Kallas v. Kallas,* 614 P.2d 641, 646 (Utah 1980). The decision to award such fees lies within the trial court's discretion. *Walther v. Walther,* 709 P.2d 387, 388 (Utah 1985); *Andersen v. Andersen,* 757 P.2d 476, 480 (Utah App.1988); *Rasband v. Rasband,* 752 P.2d 1331, 1336 (Utah App.1988).

At the close of Paulette's case, she sought attorney fees totalling $3,525. Her counsel made a proffer that he had spent approximately forty-seven hours on the case at a rate of $75 per hour. The court accepted the proffer and awarded Paulette $3,000 in fees. Thomas contends on appeal that the trial court abused its discretion in making this award because it overlooked the standard set in *Talley v. Talley,* 739 P.2d 83 (Utah App.1987) (the fee award must be supported by evidence of the financial need of the recipient *and* the reasonableness of the fee). *See also Walther,* 709 P.2d at 388; *Andersen,* 757 P.2d at 480. In *Talley,* we set forth the standard as follows: Evidence must show "the necessity of the number of hours dedicated, the reasonableness of the rate in light of the difficulty of the case and the result accomplished, and the rates commonly charged for divorce actions in the community." *Talley,* 739 P.2d at 84 (quoting *Kerr v. Kerr,* 610 P.2d 1380, 1384–85 (Utah 1980)).

In the instant case, Thomas stipulated that the rate charged by Paulette's counsel was reasonable, but questioned the necessity of the number of hours. The court made its award despite this objection. It is clear from the record that fees were incurred and Paulette was in financial need. Pleadings and affidavits were prepared; an initial hearing preceded two days of trial; interrogatories were prepared and answered; numerous witnesses were sought out and prepared for trial. The trial court had sufficient information to assess the necessity of the hours. *See Newmeyer v. Newmeyer,* 745 P.2d 1276, 1281 (Utah 1987) (Durham, J., concurring and dissenting) (a court can take judicial notice of the hours necessary to try a case). In making the child support award, the court also had sufficient information about the parties' finances. We thus defer to the trial court's assessment of the reasonableness of the fee and the financial need of the parties, and find no abuse of discretion in awarding attorney's fees to Paulette.

### FEES AND COSTS ON APPEAL

 Finally, Paulette claims that this is a frivolous appeal and requests attorney fees and double costs pursuant to R. Utah Ct.App. 33(a). We have defined a frivolous appeal as one without reasonable legal or factual basis. *Backstrom Family Ltd. Partnership v. Hall,* 751 P.2d 1157, 1160 (Utah App.1988). The "sanction" for bringing a frivolous appeal is applied only in egregious cases, "lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Porco v. Porco,* 752 P.2d 365, 369 (Utah App.1988). Egregious cases may include those obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment. *Id.; see also Brigham City v. Mantua Town,* 754 P.2d 1230, 1237 (Utah App.1988). Thomas's appeal, while unsuccessful, is worthy of consideration and should not be subject to the chilling effect of Rule 33(a) sanctions.

 Although not particularly well articulated, Paulette suggests an alternative basis for awarding her fees and costs incurred on appeal. She claims she cannot afford to respond to the appeal and that since the trial court awarded her attorney fees, we should do likewise. Attorney fees on appeal may be granted in the discretion of the court in conformance with statute or rule. *Management Services Corp. v. Development Assocs.,* 617 P.2d 406, 408 (Utah 1980). Utah Code Ann. § 30–3–3 (1984) provides that either party to a divorce action may be ordered to pay the adverse party to prosecute or defend the action. This includes attorney fees incurred on appeal. *See, e.g., Carter v. Carter,* 584 P.2d

904 (Utah 1978); *Marks v. Marks,* 98 Utah 400, 100 P.2d 207 (1940); *Hendricks v. Hendricks,* 91 Utah 564, 65 P.2d 642, 643 (1937). In view of our affirmance and the record evidence of her financial need, we exercise our discretion and award Paulette attorney fees on appeal.

The judgment of the trial court is affirmed. The case is remanded for the purpose of determining and awarding to Paulette attorney fees reasonably incurred on appeal.

DAVIDSON and JACKSON, JJ., concur.