Vickey L. BAKE, aka Vickey L.
Adderley, Plaintiff and
Respondent,

v.

Neal F. BAKE, Defendant
and Appellant.

No. 880185–CA.

Court of Appeals of Utah.

April 11, 1989.

Suzanne Marelius, Salt Lake City, for defendant and appellant.

Clark B. Allred, Vernal, for plaintiff and respondent.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Neal Bake appeals an order modifying the parties' decree of divorce by changing custody of their two sons from him to his former wife and ordering him to pay $230 per month child support. We affirm the custody award, but remand for child support findings.

Neal raises the following issues challenging the custody modification and support award: (1) the lower court erred, as a matter of law, in not applying the two-step modification process required by *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982); (2) the lower court erroneously failed to consider the suggested "best interest" factors set forth in *Hutchison v. Hutchison*, 649 P.2d 38 (Utah 1982), or abused its discretion in applying those factors; and (3) the court erred in setting child support without making findings on the factors in Utah Code Ann. § 78-45-7 (1987), which are required by *Jefferies v. Jefferies*, 752 P.2d 909 (Utah Ct.App.1988).

We first examine the change of custody. The thirteen-year marriage of the parties was dissolved on August 19, 1985. They were living in Roosevelt, Utah, with their sons, Nathan, born in 1974, and Kyle, born in 1976. Pursuant to their stipulation, the original decree awarded custody to Neal on the following basis:

> Since the award of custody is based on the desire of the children, in the event the boys change their mind and express a desire to return to live with their mother custody will be changed awarding custody to [Vickey] without a need to show a change of circumstances. In the event custody is changed to [Vickey], then [Neal] will be entitled to the visitation rights outlined herein for [Vickey].

According to Vickey's testimony about the basis for this arrangement, the boys expected to reside at Roosevelt with their father, remain at the same school, and be able to call their mother any time they wanted. Shortly after the divorce was final, Neal moved the boys to Sandy, Utah, to live with his parents. Because of his employment as a truck driver, he was away from Sandy for extended periods, leaving the care of the boys to his mother. However, she worked as a school cafeteria cook, so the boys looked after themselves in the mornings before school. The boys were unhappy with the arrangements in Sandy and requested their return to their mother, who had remarried. They preferred the situation at Roosevelt, including mother, friends, school, and their cousin Steven, who had been raised as a member of their

household. Neal refused to return the boys to Vickey, although she claims he told her she had "better get [her] boys back." Vickey eventually filed a petition to change custody. The court proceeded with the modification hearing on the basis that the above-quoted provision in the decree waived her need to first show a change of circumstances. The prehearing recommendations of the court commissioner and order endorsed thereon state, "The decree has waived the need for a change of circumstances."

■ We need not reach the issue of whether the custody provision in the parties' stipulation and divorce decree can control or waive the first part of the two-step modification process because we find, as a matter of law, that the evidence supports a finding of changed circumstances under our holding in *Maughan v. Maughan*, 770 P.2d 156 (Ct.App.1989). In *Maughan*, we analyzed *Hogge* and stated, "If the initial award was based on a thorough examination by the trial court of the various factors pertaining to the child's welfare, a rigid application of the change-in-circumstances prong is in order." *Id.* 770 P.2d at 160. If so, the modification petitioner must overcome a high threshold. *Id.* But the scope of the change-in-circumstances inquiry is less restricted when the initial custody award was not premised on any examination of the child's best interests. *Id.* Here, the initial award was based on the parent's promise that the children's preference would be honored then and later. The children's preference was an exceptional criterion upon which to base the custody determination. Due to that circumstance, the court could "accept a greater range of evidence under *Hogge*'s first prong regarding the initial custody arrangement, the events that have since transpired, and the resulting effects on the child." *Id.* The court is permitted to inquire into the "effects on the child of the established custodial relationship as it has developed over time." *Id.* (quoting *Kramer v. Kramer*, 738 P.2d 624, 627 n. 5 (Utah 1987)).

■ As in *Maughan*, the trial court's review in this case included an *in camera* interview with each boy and an examination of the parties' activities at the time of divorce and since. The evidence shows that the initial custody award was based on the boys' preference, which in turn was based on a promise that they would remain in Roosevelt close to their mother, cousin Steven, and friends, and remain in the same school. All of those relationships were altered or severed when Neal moved the boys to Sandy. There, Neal relinquished them to the surrogate care of his mother, while he was home only on weekends. The boys expressed a strong desire to return to Vickey and the other relationships at Roosevelt. Substantial evidence in the record supports the following findings by the trial court: (1) "Defendant [Neal] works as a long-haul truck driver, and is away from home the majority of the time. While he is away, his mother cares for the boys." (2) "The boys have expressed a strong desire to live with the Plaintiff [Vickey], stating that they want to be with her and with their cousin Steven, and they enjoy school more in Roosevelt, and that their friends are in Roosevelt." Those findings in turn support a conclusion that a substantial change of circumstances had occurred since the entry of the exceptional decree, leading to the second step of the *Hogge* modification process, i.e., review of the best interests of the boys to determine whether custody should be changed to Vickey.

■ Did the trial court fail to consider the best interest factors enumerated in *Hutchison? Hutchison* identified two types of factors to be considered: child factors and custodian factors. The child factors include preference, keeping siblings together, strength of bonding, and interest in continuing present arrangements when the child is happy and well-adjusted. *Hutchison*, 649 P.2d at 41. Here, the court found the boys had a strong preference for Vickey. With Vickey, they would also be with cousin Steven who was near their age and had been raised as a sibling, and from whom they were separated while living in Sandy. During the formative years, Vickey was the primary caretaker, and the

court found that they expressed a stronger bond with her than with Neal. Further, the court found Neal had told Vickey that she had "better get [her] boys back," although the intended significance of the statement is unclear.

The custodian factors include moral character and emotional stability, duration and depth of desire for custody, ability to provide personal rather than surrogate care, any impairment to function as a parent, reasons for past relinquishment, religious compatibility, kinship, and financial condition. *Id.* The court found that both parties had deep concern for the boys, as well as homes adequate in size and upkeep. The court found Vickey would be with the boys virtually every day, that Neal was away from home the majority of the time, and that his mother was caring for the boys. The court found both parents had the ability to care for the boys' needs, and that Neal earned $1,109 per month, and Vickey earned $1,217 per month and supported Steven. There are no findings on only three factors, i.e., religious compatibility, kinship, and reasons for relinquishing custody in the past. Neither party raised a problem with religion, and they are on equal kinship footing. The decree indicated that the original relinquishment was coupled with a promise to let the boys return, if they wanted.

The findings reveal that the court considered every relevant factor listed, except three not raised by the parties. The court is not required to specify the weight given to any factor. *Id.* However, the court did find that significant discrepancies in Neal's evidence adversely affected the "validity" (i.e., credibility) of his and his mother's testimony. We conclude the trial court considered and made findings on the factors relevant to the best interests of the boys.

■ Neal next claims the court abused its discretion in applying those factors to adjudge a change in custody. "Assessments of the applicability and relative weight of the various factors in a particular case lie within the discretion of the trial court." *Id.* Only where the trial court's

judgment is so flagrantly unjust as to be an abuse of discretion will this court interpose its own judgment on this issue. *Jorgensen v. Jorgensen,* 599 P.2d 510, 511–12 (Utah 1979); *Maughan,* 770 P.2d at 161. We will not substitute our judgment for that of the trial court in view of the substantial evidence in the record that supports the factual findings and the proper application of the legal standard. We cannot find a serious inequity manifesting an abuse of discretion and cannot say that the modification would not serve the boys' best interests and welfare.

■ In the issues he presented on appeal, Neal complains that "the trial court improperly limited the presentation of Defendant's case ... by interviewing the children in chambers without making a record of that interview and making findings thereon...." But his brief fails to pursue this complaint as an issue. As part of his argument that the court "misapplied the law in modifying the custody award," he devotes about one-half page to the in-chambers interviews. His analysis is:

> Additionally, the Court only briefly interviewed the children in chambers and made no record of that interview. The Court makes no reference to the questions asked of the children, does not assess their credibility or maturity and thus does not lay a proper foundation for expressing these desires as a court "finding" on which a change of custody can be based. Most importantly, this shows that this court is again being selective and biased in its treatment of the evidence.

We note that no authorities are cited in support of this obtuse statement. Utah Code Ann. § 30-3-10(1) (1988) authorizes the court to inquire of the children and take into consideration their desires regarding future custody, even though these desires are not controlling. Neal does not argue that the children's preference was the only factor considered. He claims there can be no finding of their preference for Vickey as custodian because the interviews were not on the record.

However, Neal did not oppose the unrecorded *in camera* interviews before the

trial court. The record on appeal shows the following interchange between court and counsel. Vickey's counsel: "As I indicated to the court, the first party we will request as a witness would be the two boys. Will you prefer to have me call them here or would you prefer to discuss in chambers with them their testimony?" Neal's counsel: "I think I would concur they be interviewed in chambers, your honor. I think it's far less upsetting to them. They are quite young." The court: "I agree with that. Before doing that, however, I would be interested to know what the situation is with the parties."

Pursuant to the above stipulation, the court interviewed each boy in turn at the end of Vickey's presentation of evidence, which included a letter written to her by each boy, expressing a desire to live with her. Referring to those letters, the judge stated: "I'm going to discuss those, simply to have the boys identify those in my conversation with them in chambers. Do you have any objection to that? You may make note of it now." Neal's counsel responded: "No objection, your honor." The record shows nothing further concerning the interviews until the court issued its written ruling, reiterated in the court's factual findings, stating: "The boys have expressed a strong desire to live with the Plaintiff, stating that they want to be with her and with their cousin Steven, and they enjoy school more in Roosevelt, and that their friends are in Roosevelt."

This ruling contains not only a statement of preference, but the rationale for the preferences. The preference finding is based on the letter exhibits and Vickey's testimony as well as on the interviews. Indeed, Neal asserted in a post-hearing affidavit filed with the trial court that he knew the boys had expressed a desire to live with Vickey. In *Austad v. Austad,* 2 Utah 2d 49, 269 P.2d 284 (1954), the court interviewed the children without advising counsel in advance. The Utah Supreme Court said the desirable way is for the parties to stipulate as to how the court may do it. The court stated, despite this irregularity, there was no claim or reason to suspect the children were improperly influenced in stating their preference. If so, it could have been called to the trial court's attention, affording an opportunity to take affirmative steps to correct it. *Austad* was followed in *Johnson v. Johnson,* 7 Utah 2d 263, 323 P.2d 16 (1958). There, the trial court suggested an interview procedure and counsel indicated no objection. The court stated the result of the interview would be indicated in the record, which was done. The Utah Supreme Court found nothing inimical to the rights of the plaintiff in the procedure that was followed. Finally, in *Shioji v. Shioji,* 712 P.2d 197 (Utah 1985), the supreme court relied on the trial court's account of an *in camera* interview with the children, conducted by stipulation of the parties and not transcribed or made available for review.[1]

Here, counsel had two specific opportunities to specify how the interviews should be conducted. There is no indication of any impropriety and no objection to the procedure until this appeal. Moreover, the letters, admitted without objection, also expressed a preference for Vickey. The court announced the result of the interview (with letter exhibits in hand) in its written ruling. Neal already knew about the boys' custodial preference for Vickey. He does not claim that the interviews made any difference in preference. No prejudice is indicated.

Findings of fact can be set aside on appeal only if they are clearly erroneous. Utah R.Civ.P. 52(a). This determination cannot be made unless an appellant first marshalls all the evidence that supports the

**1.** Two members of this panel have previously endorsed, albeit in the context of an adoption, the use of *in camera* interviews as an alternative to courtroom testimony by young children. *See In re Adoption of M.L.T.,* 746 P.2d 1179, 1181–82 (Utah Ct.App.1987) (Orme, J., concurring, joined by Jackson, J.). However, this court has also stated that a record of all proceedings of courts of record should be made, specifically referring to conferences in chambers. *Briggs v. Holcomb,* 740 P.2d 281, 282–83 (Utah Ct.App.1987). Although as a matter of orderly procedure the court's interview with the boys in chambers should have been made of record, appellant's acquiescence in the approach employed by the trial court precludes him from assailing that approach on appeal.

trial court's finding. *Cornish Town v. Koller*, 758 P.2d 919, 922 (Utah 1988). If Neal intended to challenge on appeal the evidentiary basis for the trial court's finding that the boys preferred to live with Vickey, it was his burden to insure that the *in camera* interviews were taken down by a reporter, transcribed, and made a part of the record on appeal. *See* note 1 *supra; see also Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983).

We affirm the judgment and order of the trial court insofar as it places custody of the children in Vickey.

## CHILD SUPPORT

■ Neal argues that findings of the parties' respective incomes are insufficient to support an award of child support. His argument is well-taken. The lower court found that Vickey earned $1,217 per month and supports her nephew Steven, and that Neal earns $1,109 per month. Exhibits 3 and 4 are the financial declarations of the parties which contain these income figures. Other financial facts can be gleaned from the exhibits, but we see nothing further in the record supporting the child support award. In *Jefferies v. Jefferies*, 752 P.2d 909 (Utah Ct.App.1988), defendant argued that the court should consider seven factors in setting prospective child support, as provided in Utah Code Ann. § 78-45-7 (1987).[2] There, we held that the trial court must enter findings of fact on the relevant factors. *Jefferies*, 752 P.2d at 911. With proper findings, we defer to the trial court unless they are clearly erroneous. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). However, without the requisite findings, we must reverse unless the evidence is clear, uncontroverted, and capable of supporting only a finding in favor of the judgment. *See Jefferies*, 752 P.2d at 911. Accordingly, we reverse that portion of the judgment and order below pertaining to

child support, and remand for proper child support findings and an award consistent with those findings. The parties are to bear their own costs of appeal.

BILLINGS and ORME, JJ., concur.

---

2. (2) When no prior court order exists, or a material change in circumstances has occurred, the court, in determining the amount of prospective support, shall consider all relevant factors including but not limited to:
   (a) the standard of living and situation of the parties;
   (b) the relative wealth and income of the parties;
   (c) the ability of the obligor to earn;
   (d) the ability of the obligee to earn;
   (e) the need of the obligee;
   (f) the age of the parties;
   (g) the responsibility of the obligor for the support of others.
   Utah Code Ann. § 78–45–7(2) (1987).