2010 UT App 291

The FREDERICK AND DOROTHY WESTLING FAMILY TRUST; Joy Greenwood, Co–Trustee; and Ellen Hardman, Co–Trustee, Plaintiffs and Appellants,

v.

Mark WESTLING, Defendant and Appellee.

Dorothy Westling, Intervenor and Appellee.

No. 20090970–CA.

Court of Appeals of Utah.

Oct. 21, 2010.

---

Michael A. Jensen, Salt Lake City, for Appellants.

Kent B. Alderman and Matthew D. Cook, Salt Lake City, for Appellee Dorothy Westling.

Before Judges ORME, VOROS, and ROTH.

## MEMORANDUM DECISION

ORME, Judge:

¶1 Sisters Joy Greenwood and Ellen Hardman (Greenwood and Hardman) are two of four surviving cotrustees of the Frederick and Dorothy Westling Family Trust (the Trust). Their mother, Dorothy Westling (Dorothy), and brother, Mark Westling (Mark), are the other two surviving cotrustees. Dorothy lives with Mark in Arizona; Greenwood and Hardman live in Utah, where the Trust was created. Mark borrowed a substantial sum from the Trust to buy a home. He failed to repay the Trust, and the home was lost through foreclosure. Purportedly acting on behalf of the Trust, Greenwood and Hardman brought this action to collect the amount Mark owed the Trust.

¶2 Dorothy moved pursuant to rule 24(a)(2) of the Utah Rules of Civil Procedure to intervene in the action. After the district court granted Dorothy's motion to intervene, she moved to dismiss the suit. The district court granted Dorothy's motion to dismiss, explaining that Greenwood and Hardman did not have standing to bring the suit because the Trust instrument gave Dorothy the authority to direct the administration of the

Trust, and Dorothy had not consented to the lawsuit against Mark. The district court later rejected Greenwood and Hardman's rule 59 motion to set aside or vacate its order dismissing the action. Greenwood and Hardman now appeal.

## INTERVENTION

■ ¶ 3 We reject Greenwood and Hardman's contention that the district court erred in granting Dorothy's motion to intervene. A party must be allowed to intervene where "(1) its application to intervene was timely, (2) it has 'an interest relating to the property or transaction which is the subject of the action,' (3) it 'is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest,' and (4) its interest is not 'adequately represented by existing parties.'" *Beacham v. Fritzi Realty Corp.*, 2006 UT App 35, ¶ 7, 131 P.3d 271 (quoting Utah R. Civ. P. 24(a)). Greenwood and Hardman do not dispute that Dorothy met prongs (1), (2), and (3). They contend, however, that they adequately represented Dorothy's interests in the suit against Mark. We disagree.

¶ 4 Without being allowed to intervene, Dorothy would be unable to protect her right under the trust instrument to direct the administration of the Trust. Moreover, although recovery of the $47,000 Mark allegedly owes the Trust would benefit the Trust and its beneficiaries, Dorothy feared that litigation would actually further deplete Trust funds. This fear is understandable given the unlikelihood of recovering anything from Mark due to his "fragile financial condition" and given Greenwood and Hardman's right to seek reimbursement from the Trust for funds they expend in pursuing the action against Mark, *see* Utah Code Ann. § 75-7-709(1) (Supp.2010) ("A trustee is entitled to be reimbursed out of the trust property ... for ... expenses that were properly incurred in the administration of the trust[.]"); *Sundquist v. Sundquist*, 639 P.2d 181, 188 (Utah 1981) ("[A] trustee is entitled to reimbursement for all expenses properly incurred in discharging the responsibilities of his trust.") (citation and internal quotation marks omitted). *See generally* Restatement (Second) of Trusts § 177 cmt. c (1959) ("It is not the duty of the trustee to bring an action to enforce a claim which is a part of the trust property if it is reasonable not to bring such an action, owing to the probable expense involved in the action or the probability that the action would be unsuccessful or that, if successful, the claim would be uncollectible owing to the insolvency of the defendant or otherwise."). Especially given the minimal burden on a potential intervenor in showing there may not be an identity of interests, *see Beacham*, 2006 UT App 35, ¶ 8, 131 P.3d 271, the district court did not err in granting Dorothy's motion to intervene.

## DISMISSAL

■ ¶ 5 Under the Utah Uniform Trust Code (the UTC), *see* Utah Code Ann. §§ 75-7-101 to -1201 (Supp.2010), a trustee may breach a duty if he or she fails to "take reasonable steps to enforce claims of the trust," *id.* § 75-7-809. At the same time, the UTC authorizes a trustee to "pay or contest any claim, settle a claim by or against the trust, and release, in whole or in part, a claim belonging to the trust." *Id.* § 75-7-814(1)(n). We conclude, however, that despite general authorization under the UTC to bring suit and the accompanying duty to take reasonable steps to prosecute that suit, Greenwood and Hardman lacked authority to pursue a collection action against Mark, and as a result, the district court did not err when it granted Dorothy's motion to dismiss.

¶ 6 To begin, we doubt that Greenwood and Hardman had authority to initiate a suit against Mark. The UTC provides that "[c]otrustees who are unable to reach a unanimous decision may act by majority decision." *Id.* § 75-7-703(1). Here, Greenwood and Hardman brought their suit against Mark without unanimous or even majority consent of the cotrustees. Certainly Mark did not consent to the institution of the suit against him. Moreover, Dorothy did not consent to the lawsuit prior to its initiation, nor did she join in filing the complaint against Mark. Thus, Greenwood and Hardman commenced and tried to continue the lawsuit with the approval of only two of the four cotrustees—

an insufficient number to act in the name of the Trust under the UTC, *see id.*

¶7 Of course, the provisions of the UTC are primarily "default" provisions that must ordinarily give way to conflicting terms in a trust instrument. *See id.* § 75–7–105(2) ("Except as specifically provided in this chapter, the terms of a trust prevail over any provision of this chapter[.]"). Here, the trust instrument empowers Dorothy to control the administration of the Trust. Specifically, Article XIV of the trust instrument provides:

> (b) In the event the Co–Trustees are unable to agree on any matter in the administration of this Trust ..., the decision of ... DOROTHY E. WESTLING shall govern so long as she ... is alive and competent.

The decision whether to maintain an action on behalf of the Trust against Mark directly implicates the administration of the Trust. Accordingly, once Dorothy made her intentions known, her insistence that the Trust not pursue a claim against Mark was controlling, and the district court correctly dismissed the suit.[1]

¶8 Greenwood and Hardman argue that "it is not logically possible to grasp or understand or even remotely know of [Dorothy]'s desires with respect to [the] litigation" against Mark without reliance on Dorothy's affidavit given in connection with her motion to dismiss, which, according to Greenwood and Hardman, is of questionable reliability. We disagree.

¶9 Even without considering her affidavit, Dorothy's desires with respect to the suit against Mark became abundantly clear once she intervened in the suit and then moved to dismiss. Specifically, Dorothy's motion to intervene states: "Dorothy did not consent to the filing of the complaint initiating this action and does not consent to expending Trust assets in furtherance of the claims asserted[.]" Similarly, Dorothy's memorandum in support of the motion to intervene states: "Dorothy does not agree with pursuing this litigation against Mark[.]" Dorothy's reply memorandum in support of her motion to intervene, her motion to dismiss, and her memorandum in support of her motion to dismiss likewise contain statements invoking her right to control the administration of the Trust and confirming her desire that the suit against Mark be dismissed. We therefore conclude that even without resort to her allegedly suspect affidavit,[2] Dorothy's desires

---

**1.** Greenwood and Hardman argue that Dorothy's refusal to consent to a suit against Mark is merely an attempt to protect her son, in violation of a duty she owes the Trust. We recognize that Dorothy retains a duty to "act in good faith and in accordance with the purposes of the trust," Utah Code Ann. § 75–7–105(2)(b) (Supp.2010), despite her broad authority under the trust instrument to control administration of the Trust. We note, however, that Dorothy is not necessarily violating a duty by withholding consent to pursue a suit against Mark. A trustee does not violate his or her duty to enforce claims of the trust if a claim is uncollectible. *See* Restatement (Second) of Trusts § 177 cmt. a (1959) ("If it reasonably appears to the trustee that a claim is uncollectible, he is not under a duty to incur the expense of bringing a suit to collect it."). Greenwood and Hardman acknowledge that Mark's financial condition is "fragile." From all that appears in the record, then, Dorothy may well have been acting prudently in deciding that a collection action against Mark would be futile and only serve to further dissipate trust assets.

**2.** Greenwood and Hardman allege that Dorothy was not sufficiently competent to understand the significance of her affidavit or, alternatively, that

the affidavit was the product of undue influence on the part of Mark. Given what we know, this claim is unpersuasive. Under the trust instrument, incapacity is "established by a written statement signed by an unrelated physician and filed with the other Co–Trustees." Greenwood and Hardman did not, however, present to the district court such a statement or any comparable evidence calling into question Dorothy's competency. Greenwood and Hardman merely allege that Mark unduly influenced Dorothy.

Greenwood and Hardman also ignore a related proceeding in which Dorothy was found to be competent. In that proceeding, Dorothy underwent three separate evaluations testing her competency. In each, she was deemed competent and capable of handling her affairs under the Trust. Arizona's Division of Aging Adult Protective Services conducted an investigation of alleged financial abuse of Dorothy by Mark and concluded that Dorothy "is fully aware of what is transpiring in the Family Trust and with the properties which she and the Trust own." Dorothy's primary physician, far from concluding that she was incapacitated, determined that "Dorothy is fully capable of decision making with her health and finances" and that she "is of sound mind and answers questions appropriately and

with respect to the litigation against Mark were plainly evident. Accordingly, once it became apparent that Dorothy did not wish to pursue the litigation, the district court had to conclude that Greenwood and Hardman lacked authority to pursue a suit against Mark on behalf of the Trust.

## CONCLUSION

¶ 10 In sum, because Dorothy's decisions concerning the administration of the Trust control as long as she is alive and competent, and given the steps she took to indicate that she did not want the Trust to pursue a collection action against Mark, we hold that the district court did not err in concluding Greenwood and Hardman did not have authority to pursue a suit against Mark. Consequently, the district court did not err in granting Dorothy's motion to intervene and her motion to dismiss. Moreover, be-

cause we affirm the district court's decision to dismiss, we see no error in the court's decisions not to convert the dismissal motion into one for summary judgment and to deny Greenwood and Hardman's rule 59 motion by which they sought to set aside or vacate the district court's ruling granting Dorothy's motion to dismiss.[3]

¶ 11 Affirmed.

¶ 12 WE CONCUR: J. FREDERIC VOROS JR., and STEPHEN L. ROTH, Judges.

knows exactly what she wants." And a geriatrician concluded that, despite "mild dementia," Dorothy "shows absolute ability to make informed decisions regarding her own well being, where she chooses to live, how she wishes to distribute her money, how she wishes to use her money, [and] how she makes basic decisions." The geriatrician found no evidence that "would warrant any support for the contention that [Dorothy] is cognitively incapacitated."

3. We also conclude that, contrary to Dorothy and Mark's contention, this appeal is not frivolous. *See generally* Utah R.App. P. 33. "[A] frivolous

appeal [is] one without reasonable legal or factual basis." *Maughan v. Maughan,* 770 P.2d 156, 162 (Utah Ct.App.1989). However, "[t]he 'sanction' for bringing a frivolous appeal is applied only in egregious cases." *Id.* "Egregious cases may include those obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Id.* Although we have determined that Greenwood and Hardman's appeal is without merit, it is not obviously so. Thus, the appeal is not frivolous. Consequently, we deny Dorothy and Mark's request for an award of attorney fees and double costs.